**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Dennis DEMPSEY, Defendant-Appellant.**

**No. 83–5549.**

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 17, 1984.

Decided April 27, 1984.

Rehearing and Rehearing En Banc
Denied June 12, 1984.

Stephen H. Miller (argued), Louisville, Ky., for defendant-appellant.

Ronald E. Meredith, U.S. Atty., Alan Sears (argued), Asst. U.S. Atty., Louisville, Ky., for plaintiff-appellee.

Before LIVELY, Chief Judge, KENNEDY, Circuit Judge, and TAYLOR, District Judge.[*]

LIVELY, Chief Judge.

The defendant Dennis Dempsey raises a number of issues in this appeal from his jury conviction for conspiring to possess cocaine with the intent to distribute it in violation of 21 U.S.C. §§ 841(a)(1) and 846. Since sufficiency of the evidence is not an issue, no detailed statement of facts is necessary. Ten defendants were named in the conspiracy charge and eight of them entered into plea bargains. Dempsey and one co-defendant, Dr. Sherrill Nunnelley, were tried jointly.

Dr. Nunnelley's brother, L.D. Nunnelley, was the hub of the conspiracy. Patti Dempsey, sister of the defendant, lived with L.D. Nunnelley, at times occupying part of Sherrill Nunnelley's home and at other times living in a trailer on the grounds. There is a great deal of evidence that drug transactions were carried out on Sherrill Nunnelley's property and the government charged that he acquiesced in the use of his property for illegal purposes and actually participated in and financed L.D. Nunnelley's activities. The defendant Dennis Dempsey was connected to the conspiracy by testimony of his participation in several transactions, including a trip to Florida by chartered jet to pick up cocaine.

Dennis Dempsey's brother William testified against Sherrill Nunnelley and Sherrill's brother, L.D. Nunnelley, testified against Dennis Dempsey. However, neither witness testified against his own brother. This apparently resulted from an agreement with the government by which each non-defendant brother was promised he would not be required to incriminate his own brother so long as he testified truthfully on other matters, and volunteered no information helpful to his own brother.

## I.

The first issue raised by Dempsey requires this court to decide whether an indictment which charges a conspiracy under 21 U.S.C. § 846 must allege an overt act.

Dempsey filed a pretrial motion to dismiss the indictment on several grounds including its failure to allege one or more overt acts. On appeal Dempsey argues that the indictment which charged a conspiracy without setting forth an overt act "left the prosecution free to roam at large ...," quoting *Russell v. United States*, 369 U.S. 749, 768, 82 S.Ct. 1038, 1049, 8 L.Ed.2d 240 (1962). He contends that the overt act is an essential element of the crime of conspiracy which must be charged in the indictment to give the defendant adequate notice of the charge which he must defend against. Thus Dempsey asserted in his district court motion that the indictment "is so vague it should be dismissed."

■ The indictment in this case was "bare bones." However, in response to a motion for a bill of particulars, the district court directed the government to inform the defendants of the approximate date that each was charged with entering the conspiracy and the names of all unindicted co-conspirators. With this information and that contained in the indictment we believe the defendants had adequate notice of the charges against them and were protected against double jeopardy, and that the prosecutor was limited to presenting a case based on the grand jury's determination of probable cause. *Russell v. United States*, supra. Thus, unless an overt act is a necessary element of the crime charged under 21 U.S.C. § 846, the district court correctly denied Dempsey's motion to dismiss the indictment.

There is no doubt that an indictment under the general federal conspiracy statute, 18 U.S.C. § 371, is defective if it fails to charge an overt act since § 371 requires that "one or more of such persons [the conspirators] do any act to effect the object

---

* The Honorable Anna Diggs Taylor, Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

of the conspiracy ...." The overt act is clearly an element of the offense. However, the drug conspiracy statute, 21 U.S.C. § 846, contains no such provision:

### § 846. Attempt and conspiracy

Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

"[T]his subchapter" refers to the Controlled Substances Act of 1970.

At common law, conspiracy did not require an overt act. While there are no federal common law crimes, *United States v. Hudson and Goodwin,* 11 U.S. (7 Cranch) 32, 3 L.Ed. 259 (1812), a statute creating a conspiracy offense may follow the common law and not require an overt act as an element of the crime. This was made clear by Justice Holmes in *Nash v. United States,* 229 U.S. 373, 378, 33 S.Ct. 780, 782, 57 L.Ed. 1232 (1913), in answering the argument that an overt act was a requirement of a conspiracy to violate the Sherman Act:

Coming next to the objection that no overt act is laid, the answer is that the Sherman Act punishes the conspiracies at which it is aimed on the common law footing—that is to say, it does not make the doing of any act other than the act of conspiring a condition of liability. The decisions as to the relations of a subsequent overt act to crimes under Rev.Stat. § 5440, in *Hyde v. United States,* 225 U.S. 347 [32 S.Ct. 793, 56 L.Ed. 1114], and *Brown v. Elliott,* 225 U.S. 392 [32 S.Ct. 812, 56 L.Ed. 1136], have no bearing upon a statute that does not contain the requirement found in that section. As we can see no reason for reading into the Sherman Act more than we find there, we think it unnecessary to offer arguments against doing so.

Most courts which have decided the issue have concluded that a conviction under § 846 is valid without allegation or proof of an overt act. See *United States v. DeJesus,* 520 F.2d 298, 301 (1st Cir.), *cert. denied,* 423 U.S. 865, 96 S.Ct. 126, 46 L.Ed.2d 94 (1975); *United States v. Bermudez,* 526 F.2d 89, 94 (2d Cir.1975), *cert. denied,* 425 U.S. 970, 96 S.Ct. 2166, 48 L.Ed.2d 793 (1976); *United States v. Dreyer,* 533 F.2d 112, 117 n. 6 (3d Cir.1976); *United States v. Nanez,* 694 F.2d 405, 409 (5th Cir.1982), *cert. denied,* — U.S. —, 103 S.Ct. 1884, 76 L.Ed.2d 813 (1983); *United States v. Umentum,* 547 F.2d 987, 991 (7th Cir.1976), *cert. denied,* 430 U.S. 983, 97 S.Ct. 1677, 52 L.Ed.2d 376 (1977); *United States v. Blasco,* 702 F.2d 1315, 1330 (11th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 275–276, 78 L.Ed.2d 256 (1983).

The Tenth Circuit holds that an indictment under § 846 need not allege an overt act, but proof of such an act is necessary for conviction. *United States v. King,* 521 F.2d 61, 63 (10th Cir.1975); *cf. United States v. Smith,* 692 F.2d 693, 696 (10th Cir.1982). Decisions from the Ninth Circuit do not present a clear picture. Compare *Ewing v. United States,* 386 F.2d 10 (9th Cir.1967), *cert. denied,* 390 U.S. 991, 88 S.Ct. 1192, 19 L.Ed.2d 1299 (1968) (overt act not required), with *United States v. Melchor-Lopez,* 627 F.2d 886, 890 (9th Cir. 1980) (recognized "essential elements" of conspiracy, including overt act, as required in prosecution under 21 U.S.C. § 846).

This court has not addressed the question of whether an indictment charging a conspiracy under 21 U.S.C. § 846 must allege an overt act. However, as Dempsey points out in arguing that the district court failed to charge the jury that proof of an overt act was required, we have stated in § 846 cases that proof of an overt act is one of the essential elements of a conspiracy required for conviction. See *United States v. Meyers,* 646 F.2d 1142, 1143–44 (6th Cir.1981); *United States v. Kirk,* 584 F.2d 773, 776 (6th Cir.), *cert. denied,* 439 U.S. 1048, 99 S.Ct. 726, 58 L.Ed.2d 708 (1978); *United States v. Thompson,* 533 F.2d 1006, 1009 (6th Cir.), *cert. denied,* 429 U.S. 939, 97 S.Ct. 353, 50 L.Ed.2d 308 (1976); *United States v. Williams,* 503

F.2d 50, 54 (6th Cir.1974). In each of these cases the indictment did charge an overt act and the question on appeal was whether the evidence was sufficient to support the conviction. In disposing of the issue of sufficiency of evidence the court recited the elements of the offense of conspiracy as developed in cases brought pursuant to 18 U.S.C. § 371. Since the validity of the indictment was not an issue and the indictment in each case charged one or more overt acts, we construe the references to the elements of a conspiracy in these decisions in the context in which they were written. Each indictment did charge at least one overt act, whether required to do so or not, and the court held that the proof must establish that at least one of the overt acts took place. In other words, as the indictments were drawn they necessitated an instruction requiring proof of at least one overt act and sufficient evidence to meet that requirement.

The present case is different from those previously decided by this court. Here, no overt act was charged. We agree with the court in *United States v. Umentum*, supra, which stated:

> An overt act, therefore, need not be charged in a § 846 conspiracy. If an overt act need not be charged, it need not be proved. If an overt act need be neither charged nor proved, there remains nothing about which to instruct on that issue.

547 F.2d at 991.

■ Our holding that it was not necessary to charge an overt act is based on the conclusion that in enacting 21 U.S.C. § 846 Congress intended to make the conspiracy itself a complete offense. Section 846 is included in the Controlled Substances Act which was part of a bill "designed to deal in a comprehensive fashion with the growing menace of drug abuse in the United States." H.R.Rep. No. 91–1444, 91st Cong., 2d Sess. 1, *reprinted in* [1970] U.S. Code Cong. & Ad.News 4566, 4567. The bill was described as revising "the entire structure of criminal penalties involving controlled drugs by providing a consistent method of treatment of all persons accused

of violations." *Id.* at 4 [1970] U.S.Code Cong. & Ad.News 4570. In fashioning a comprehensive answer to a pervasive problem Congress chose to create a common law type offense of conspiracy, omitting charge and proof of an overt act as one of its elements. See generally *United States v. Everett*, 700 F.2d 900 (3d Cir.1983). Thus, we agree with those courts which have held that it is not necessary to charge and prove an overt act in a prosecution under 21 U.S.C. § 846.

## II.

Dempsey also contends that the district court erred in refusing to enforce an agreement made by the government. He claims that the prosecutors agreed with his brother, William Dempsey, that if William would cooperate, neither he nor Dennis nor Patti Dempsey would be prosecuted. The district court held a hearing on the motion to enforce this alleged agreement. William Dempsey, Patti Dempsey and a former Assistant United States Attorney testified on the scope of the immunity agreement and at the conclusion of the hearing Chief Judge Charles M. Allen made a credibility finding. He stated on the record that he did not believe either William or Patti Dempsey and that he found the former Assistant United States Attorney's version much more logical. Judge Allen noted that despite many contacts with the attorneys assigned to prosecute this case over a long period of time none of the witnesses claimed that the agreement immunized Dennis Dempsey until the week of the trial. The district court made a finding of fact that the agreement was that William Dempsey would not be required to testify against Dennis Dempsey on direct examination.

■ The credibility determination of the district judge is entitled to great deference and his finding of fact may not be set aside unless clearly erroneous. We find that the record fully supports the district court in both features of its ruling. A somewhat similar case, where the same conclusion was reached, is *United States v. Lyons*, 670 F.2d 77 (7th Cir.), *cert. denied,*

457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982). There the scope of an immunity agreement was in dispute and the court of appeals upheld the ruling of the trial judge, emphasizing the deference due his determination on weight of the evidence and credibility.

## III.

The defendants made a motion to quash the jury panel on the ground that it was tainted by contact with a prior case involving one of the indictees in the present case who pled guilty. The district court denied the motion and Dempsey claims prejudicial error. Sixteen members of the venire from which the jury in the present case was drawn were members of the one from which the jury in the earlier case was selected, and three had served in the earlier trial. In response to the motion the district court dismissed the entire array for the day and instructed the clerk to call the next day only those veniremen who had not been called for the previous case. Through oversight, eight of those who had been called in the previous case were included in the venire for the Dempsey-Nunnelley trial when jury selection began. The district court put these eight persons at the end of the list and none of them served on the jury which convicted Dempsey.

■ Though his name was mentioned in both trials, the co-indictee pled guilty to both indictments and was not on trial in either case. Dempsey has failed to show that the jury which tried him was tainted. The three jury members who served in the earlier trial were not called for Dempsey's trial; in fact, it is not claimed that any of the eight who had contact with the earlier case were called. Dempsey has failed to show any prejudice, and the district court correctly overruled his motion.

The cases which Dempsey cites in support of his claim of error do not require reversal. In *United States v. Stevens,* 444 F.2d 630 (6th Cir.1971), the entire venire from which the jury was selected had been present in the courtroom throughout the trial of a similar case of a co-defendant in

Stevens' case and had heard all the testimony. Further, eight of the twelve jurors who served on Stevens' case had served on the jury which convicted the co-defendant. The court expressed its disapproval of the practice of permitting prospective jurors to observe trials in progress, and its approval of the practice, where possible, of not calling jurors to serve on cases having witnesses or parties who were involved in cases in which they were previously empanelled. Nevertheless, the court found that the circumstances in Stevens' trial did not establish a *per se* deprivation of the right to a fair trial, and affirmed his conviction upon finding he had failed to show that he was prejudiced by the exposure of the jury panel to the previous trial.

In *United States v. Carranza,* 583 F.2d 25 (1st Cir.1978), some members of the venire from which jurors were selected had sat on a prior case in which the chief government witness and some of the evidence were the same as in the defendant's trial. As in the present case, there was no claim that any of the jurors from the prior case actually served at the defendant's trial. The court of appeals rejected the defendant's claim of reversible error and expressed its agreement with this court's decision in *Stevens.* The court stated:

> A review of the cases reveals that the circuit courts, while expressing disapproval of the practices of using jurors who had served in prior similar cases involving the same government witnesses, have been loathe to upset convictions where such use of jurors has occurred. The rule generally followed is that, unless a specific showing of bias or prejudice is made, the fact that a juror sat in a prior case involving the same government witnesses and the same type of crime will not be grounds for disqualification *per se* unless the defendant is charged with an offense arising from the same transaction.

*Id.* at 28 (citations omitted).

We also note that, despite his claim of taint, Dempsey did not use all of his peremptory challenges during jury selection.

In *Graham v. United States*, 257 F.2d 724 (6th Cir.1958), this court held that a defendant who made no showing of prejudice and did not exhaust his peremptory challenges could not complain that he did not have an impartial jury.

## IV.

The final two arguments advanced by Dempsey on appeal do not require extended discussion.

### A.

Both Dempsey and Nunnelley made pretrial motions for separate trials. The motions were denied. Dempsey claims on appeal that if he had been granted a severance, under his brother's agreement with the government, William Dempsey could not have been called as a witness at his separate trial. As it was, in testifying against Sherrill Nunnelley, William Dempsey mentioned incidents in which Dennis was involved, without mentioning Dennis Dempsey's name. L.D. Nunnelley had tied Dennis Dempsey to these same incidents in his earlier testimony, according to Dempsey.

This was a proper case for joinder of offenses and defendants in a single indictment since the same transactions are involved in the charges against Dempsey and Nunnelley. Rule 8, Fed.R.Crim.P. The fact that William Dempsey and L.D. Nunnelley testified pursuant to agreements which limited the government's right to inquire on direct examination concerning acts of their respective brothers was not a ground for severance. Dempsey was not denied his right of confrontation because of his fear that something damaging to him might come out if he cross-examined his brother. He cross-examined L.D. Nunnelley, the "brother" witness who implicated him in the conspiracy, extensively. He also cross-examined the other witnesses who implicated him. He cannot complain because an agreement which shielded him from inculpatory testimony from his brother made him exercise caution in cross-examining his brother with respect to testimony involving his co-defendant.

This court may reverse a district court's denial of a motion for severance only for an abuse of discretion. *United States v. Frazier*, 584 F.2d 790, 795 (6th Cir.1978); *United States v. Behrens*, 689 F.2d 154, 159 (10th Cir.), *cert. denied*, 459 U.S. 1088, 103 S.Ct. 573, 74 L.Ed.2d 934 (1982). As a general rule, especially in conspiracy cases, parties who are jointly indicted should be tried together. As the court stated in *United States v. Howell*, 664 F.2d 101, 106 (5th Cir.1981), *cert. denied*, 455 U.S. 1005, 102 S.Ct. 1641, 71 L.Ed.2d 873 (1982), while a district court may order separate trials in its discretion if necessary to avoid prejudice, "the defendant has the heavy burden of showing specific and compelling prejudice resulting from a joint trial which can be rectified only by separate trials." (Citations omitted). Dempsey has not carried that burden in this case.

### B.

Dempsey made a pretrial motion to exclude any reference during trial to a prior conviction for which he was sentenced under the Youth Corrections Act, 18 U.S.C. § 5005 *et seq.* (1976). He argues that he was entitled to have this conviction set aside, relying on 18 U.S.C. § 5021(a), which provides:

(a) Upon the unconditional discharge by the Commission of a committed youth offender before the expiration of the maximum sentence imposed upon him, the conviction shall be automatically set aside and the Commission shall issue to the youth offender a certificate to that effect.

The short answer to this contention is that Dempsey was not discharged by the parole commission *before* the expiration of the maximum sentence imposed upon him, and thus he was not entitled to have his conviction automatically set aside. His indeterminate sentence expired six years after it was imposed and his unconditional discharge occurred at that time. Since Demp-

sey had been sentenced under 18 U.S.C. § 5010(b), six years was the maximum sentence permitted. 18 U.S.C. § 5017(c):

(c) A youth offender committed under section 5010(b) of this chapter shall be released conditionally under supervision on or before the expiration of four years from the date of his conviction and shall be discharged unconditionally on or before six years from the date of his conviction.

We disagree with the conclusion of the court in *United States v. Arrington,* 618 F.2d 1119 (5th Cir.1980), *cert. denied,* 449 U.S. 1086, 101 S.Ct. 876, 66 L.Ed.2d 812 (1981), that mere completion of the maximum sentence under the Youth Corrections Act entitles a defendant to expunction of his criminal record. Section 5021(a) clearly requires that the parole commission unconditionally discharge the youth offender before expiration of the maximum sentence.

The judgment of the district court is affirmed.