791 F.2d 935
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
RONNIE E. LANE, Defendant-Appellant.
 84-3862
 United States Court of Appeals, Sixth Circuit.
 4/18/86
 
 AFFIRMED
 N.D.Ohio
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO
 BEFORE: RYAN, Circuit Judge; BROWN and CELEBREZZE, Senior Circuit Judges.
 Per Curiam.
 
 
 1
 Defendant-appellant Ronnie E. Lane appeals his convictions of two counts of dealing in counterfeit money, in contravention of 18 U.S.C. Sec. 473 (1982), and of one count of distributing marihuana, in violation of 21 U.S.C. Sec. 841(a)(1) (1982). Lane contends on appeal that the district court committed prejudicial error in denying severance of the drug and counterfeiting offenses, improperly prohibiting him from impeaching a government witness with evidence of the witness' prior misconduct, and refusing to give him credit on his sentence for the period he spent free, but restricted by the terms of a bond, between the time of his arrest and trial. We affirm.
 
 
 2
 Viewing the facts in the light most favorable to the government, Glasser v. United States, 315 U.S. 60, 80 (1942), the following transpired. In December, 1982, Lane sold $1,000 worth of counterfeit one hundred dollar bills and a small quantity of marihuana to Randy Shoemaker, a long-time friend. After Shoemaker was arrested trying to pass the bills, he named Lane as the source. In December, 1982, or January, 1983, Lane sold $2,000 in counterfeit bills to Nancy and Lonnie Scarberry. Some of these bills found their way through Glen Dale Vermillion to William Ford, who sold them to an undercover Secret Service agent, Ralph Curtis. Agent Curtis later set up a deal with Ford for the purchase of fifteen pounds of marihuana. Ford contacted Vermillion, who in turn dealt with the Scarberrys, for the purchase of the marihuana. In April, 1983, Ford and Vermillion met the Scarberrys and Lane at a massage parlor in Beaverdam, Ohio, where Lane sold the marihuana to Vermillion and Ford. Vermillion and Ford were arrested shortly thereafter when they delivered the marihuana to Agent Curtis in Findlay. Both made voluntary oral and written statements implicating Lane. After their arrests, the Scarberrys named Lane as the source of both the marihuana and the counterfeit money obtained by Agent Curtis.
 
 
 3
 In January, 1984, an indictment charged Lane with two counts of dealing in counterfeit money and one count of conspiracy to deal in counterfeit money. Lane was released on a conditional property bond after voluntarily appearing before a magistrate. In April, 1984, a superceding indictment was returned against Lane, charging him with two counts of dealing in counterfeit money and one count of distributing marihuana. Shoemaker, Vermillion, Ford, both Scarberrys, and Agent Curtis testified for the Government at Lane's trial. In addition, marihuana and counterfeit bills were introduced as physical evidence. A jury found Lane guilty on all counts. This appeal ensued.
 
 
 4
 Lane first contends that he was prejudiced by the district court's denial of his motion to sever the charge of distributing marihuana from the counterfeiting charges.[1] This matter is governed by Rule 14 of the Federal Rules of Criminal Procedure,[2] which provides in pertinent part that '[i]f it appears that a defendant . . . is prejudiced by a joinder of offenses . . . in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts . . . or provide whatever other relief justice requires.' On appeal, we review a district court's denial of severance for an abuse of discretion. United States v. Lane, 106 S. Ct. 725, 732 n.12 (1986); United States v. Dempsey, 733 F.2d 392, 398 (6th Cir.), cert. denied, 105 S. Ct. 389 (1984); United States v. Wirsing, 719 F.2d 859, 864 (6th Cir. 1983).
 
 
 5
 To invoke Rule 14, a criminal defendant must first demonstrate prejudice by the joint trial of several offenses. Lane, 106 S. Ct. at 732 n.12; see United States v. Kopituk, 690 F.2d 1289, 1316(11th Cir. 1982), cert. denied, 463 U.S. 1209 (1983). This prejudice must be of a specific and compelling nature to necessitate separate trials. Dempsey, 733 F.2d at 398; United States v. Kenny, 645 F.2d 1323, 1345 (9th Cir.), cert. denied, 452 U.S. 920 (1981); United States v. Werner, 620 F.2d 922, 928-29 (2d Cir. 1980). Next, if prejudice is shown, the defendant must demonstrate that the district court abused its discretion when balancing the defendant's interest in a trial free from prejudice against "the interest of the public in avoiding a multiplicity of litigation." Wirsing, 719 F.2d at 864-65 (quoting 8 J. Moore, Moore's Federal Practice p14.02 (2d ed. 1985)); see United States v. Hatcher, 680 F.2d 438, 442 (6th Cir. 1982); Werner, 620 F.2d at 928-29.
 
 
 6
 Lane contends that he was prejudiced because he desired to testify to one offense but not the other. The district court correctly noted, however, that such an assertion does not mandate severance. Alvarez v. Wainwright, 607 F.2d 683, 685 (5th Cir. 1979) (per curiam). Rather, a defendant must demonstrate undue prejudice premised on self-incrimination grounds, see United States v. Armstrong, 621 F.2d 951, 954 (9th Cir. 1980), and present the trial court with sufficient evidence, showing the importance of testifying on one count and the need to refrain from testifying on another, to enable the court to balance the considerations of judicial economy and the defendant's interest. Baker v. United States, 401 F.2d 958, 977 (D.C. Cir. 1968) (per curiam). Since Lane made no showing of this nature, we hold that the district court did not err in denying severance on this ground.
 
 
 7
 Alternatively, Lane argues that he was prejudiced by the 'spillover' effect which occurs when evidence of one offense is used by the jury to infer bad character, leading to a conviction on the other offense based on this assessment of the defendant and not the evidence supporting the criminal charge. Even assuming that Lane has demonstrated the requisite prejudice in this regard, however, he has failed to establish that the prejudice outweighed the public's interest in avoiding a multiplicity of litigation. There is no question that the instant case involves large areas of overlapping proof making joinder desirable. See Wirsing, 719 F.2d at 863. Each of the non-Government witnesses testified to Lane's dealings in both counterfeit money and marihuana. Agent Curtis initially contacted William Ford to purchase some counterfeit money and only later arranged the marihuana transaction. The evidence showed that the purchase of the marihuana followed the same general chain of distribution as the counterfeit money, namely, from Ronnie Lane to the Scarberrys to Vermillion and Ford. We find that the possibility of prejudice to Lane resulting from the trial court's refusal to sever the offenses was slight when compared with the substantial countervailing interest of judicial economy. Accordingly, we hold that the district court did not abuse its discretion in denying Lane's motion for severance of offenses.[3]
 
 
 8
 Lane next contends that the district court improperly prohibited him from introducing extrinsic evidence to show that Nancy Scarberry, a government witness, had possibly been involved in passing altered dollar bills eleven years before his trial. We will disturb a district court's evidentiary ruling only if it was clearly erroneous. United States v. Lambert, 771 F.2d 83, 89 (6th Cir.), cert. denied, 106 S. Ct. 598 (1985). We find no error in the instant case in the district court's refusal to admit Lane's proffered evidence of Nancy Scarberry's prior misconduct.
 
 
 9
 Lane based admissibility of the extrinsic evidence on the 'other crimes' exception of Fed. R. Evid. 404(b). Reliance on Rule 404(b) is, however, inappropriate. Since Scarberry was a witness and there had been no conviction arising out of her alleged prior misconduct, admissibility of the extrinsic evidence was governed by Fed. R. Evid. 608(b). See United States v. Pintar, 630 F.2d 1270, 1285 (8th Cir. 1980). Rule 608(b) prohibits proving specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, by use of extrinsic evidence. Consequently, the trial court did not err in denying admission of Lane's proffered evidence of Scarberry's possible prior misconduct.[4]
 
 
 10
 Lane's final contention, that the district court, in ruling on his Motion for Reduction of Sentence under Fed. R. Crim. P. 35(b), erred in failing to credit his sentence with the time he spent free on bond awaiting trial, is totally without merit. Although by statute a defendant shall get 'credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed,' 18 U.S.C. Sec. 3568 (1982) (emphasis added), we agree with the courts that have unanimously held that 'in custody' means actual confinement and refused to give credit for time spent free, even on highly restrictive bonds, awaiting trial. E.g., Ortega v. United States, 510 F.2d 412, 413 (10th Cir. 1975) (per curiam); United States v. Peterson, 507 F.2d 1191 (D. C. Cir. 1974) (per curiam); Polakoff v. United States, 489 F.2d 727, 730 (5th Cir. 1974); United States v. Hoskow, 460 F. Supp. 929, 931 (E.D. Mich. 1978).
 
 
 11
 In light of the foregoing, the judgment of the district court is affirmed.
 
 
 
 [1]
 Lane also perfunctorily argues that the two counterfeiting charges should have been severed from one another. We find this contention to be completely without merit
 
 
 [2]
 At oral argument, Lane's counsel disavowed any reliance upon Fed. R. Crim. P. 8(a)
 
 
 [3]
 Even if the district court had abused its discretion under Rule 14, we are convinced that the overwhelming evidence of Lane's guilt would render any error harmless. See Fed. R. Crim. P. 52(a)
 
 
 [4]
 Furthermore, it appears that the evidence was irrelevant, see Fed. R. Evid. 401, since Scarberry admitted on direct examination that she knowingly bought counterfeit bills from Lane