**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Donald PELFREY (86–3166), Daniel F. Heberling (86–3167), and Gregory Arnold (86–3176), Defendants-Appellants.**

Nos. 86–3166, 86–3167 and 86–3176.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 3, 1987.

Decided June 30, 1987.

Marcus S. Carey (argued), Ft. Mitchell, Ky., for defendants-appellants in No. 86–3176.

R. Scott Croswell, III, Croswell & Adams Co., LPA, Cincinnati, Ohio, Elizabeth E. Agar (argued), for defendants-appellants in Nos. 86–3166 and 86–3167.

Kathleen Brinkman (argued), Asst. U.S. Atty., Cincinnati, Ohio, for plaintiff-appellee.

Before LIVELY, Chief Judge, RYAN, Circuit Judge, and JOINER, Senior District Judge.[*]

RYAN, Circuit Judge.

Defendants Pelfrey, Heberling, and Arnold appeal their convictions under 21 U.S.C. § 846 (1981) for conspiring to distribute marijuana and cocaine.

Appellant Arnold contends that he was convicted with evidence excluded by a pretrial order and that the evidence against him was insufficient to sustain a conviction. All three defendants contend that the cases against them must be dismissed under the Speedy Trial Act, 18 U.S.C. §§ 3161–74 (1985), because the trial court expended 109 days, exclusive of legitimate delays, between their first court appearances and the commencement of their trial. The Act permits only 70 such days.

We hold that Arnold was convicted on sufficient admissible evidence, and that there was no violation of the Speedy Trial Act. We therefore affirm all three convictions.

---

[*] The Honorable Charles W. Joiner, Senior Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

## I.

These three defendants were among a group of 40 defendants named in a 166-count indictment returned on September 16, 1982. They were charged only with one count of conspiring to possess with intent to distribute and conspiring to distribute "large quantities" of marijuana and cocaine. The issues raised on this appeal all arose from the government's decision to try all 40 accused members of the conspiracy together. Inevitably, this led to many delays, prompting recurrent concerns about compliance with the Speedy Trial Act, 18 U.S.C. §§ 3161–74 (1985), and also led certain defendants to feel that they were being herded toward conviction with little individualized attention to their pleas of innocence.

Arnold, in particular, claims that his conviction resulted from mistaken identity. He planned a defense founded upon suggesting that certain tax returns the government claimed were his, in fact had been filed by another person with the same name. He then intended to suggest that the government had no hard evidence that the Arnold who cropped up repeatedly in the government's documentary evidence, buying large quantities of drugs from other alleged coconspirators and engaging in other activity with these same people, was in fact he.

This defense plan was never carried out, because Arnold agreed that his case would be tried to the court on stipulated facts. Soon after he was charged, Arnold, along with a number of other defendants, sought a "bill of particulars" from the government to ascertain what evidence, aside from what the indictment implied, the government intended to bring to flesh out its conspiracy charges. The government refused, and the district court ordered it to supply the information requested. It still refused, instead appealing the issue to this court, which decided, in an unpublished opinion, that the government must "set out all overt acts which it intends to prove at trial," or waive proof of these acts.

It was at this point that Arnold chose to stipulate to the admissibility of all of the government's evidence against him, apparently abandoning his plan to interpose the defense of mistaken identity, and believing that the stipulated evidence would be insufficient to convict him. That belief apparently derived from Arnold's mistaken idea that he could not be convicted unless the government proved he had committed an "overt act" in furtherance of the conspiracy, and that no such act was provable because the government failed to comply with the court's order that it must "set out all overt acts which it intends to prove at trial." Critical to the defendant's theory was his conclusion that he would suffer no detriment by stipulating to the government's case against him because, no matter how incriminating the stipulated evidence, it did not include evidence of the requisite "overt act."

The flaw in the defendant's theory is that the law, as will be seen hereafter, did not require that an overt act in furtherance of the conspiracy be charged or proved in order to convict Arnold of the offense with which he was charged. Recognizing that, the trial court relied upon all of the incriminating evidence to which Arnold had stipulated on the assumption that it would be insufficient to convict him, explaining that it was not relying upon the stipulated evidence to determine whether Arnold committed "overt acts," but simply to determine whether he had taken part in the conspiracy. The stipulation included an abundance of circumstantial evidence to establish Arnold's membership in the conspiracy.

## II.

The Speedy Trial issue was even more a consequence of the unwieldiness of a trial with 40 defendants. Throughout the pretrial period, there was the confusion of, first, seeing that all defendants who could be found and arrested were brought in for an initial appearance before the court. This process took from October 26 to November 19, 1982. There were over 175 pretrial motions filed, beginning on December 10, 1982. These motions included numerous discovery motions, and, as soon as

the government announced its plans for grouping the defendants for trial, motions for severance. These severance motions were decided more than once as the pretrial period wore on, because attrition due to guilty pleas and the granting of severances kept changing the planned trial groupings. There were also motions by the government questioning the joint representation of multiple defendants by single lawyers or law firms.

As mid–1983 arrived, and no trial had yet been held, the Speedy Trial Act began to weigh on the mind of all parties and the trial court. Defense counsel continued to assert an eagerness to go to trial so as to avoid any appearance of "sandbagging" the government with Speedy Trial claims. The government filed briefs urging the court to dispose of all pending motions immediately in the hope of getting the defendants to trial before the time limits ran out. The district court also repeatedly expressed concern over compliance with the Act. Twice, on April 29 and July 5, 1983, the judge made entries of his findings of facts pertinent to the Act's requirements and its various provisions excluding time from the statutory 70–day maximum pretrial period.

Finally, on March 23, 1984, defendants Pelfrey and Heberling moved for dismissal on the ground that the 70–day period had expired. Arnold made no separate motion of his own to that effect. The district court did not act on these motions until April 23, 1984, the same day defendants' cases were submitted to the court for trial on stipulated facts, when the court orally stated that the motions had been "overruled."

### III.

▪ Defendant Arnold stipulated to a number of facts tending to suggest that he received marijuana in large quantities from other defendants on various occasions, that he paid money for the marijuana, that he worked on cars used for drug distribution, that he spoke on the phone with another defendant about "babysitting" for a large drug stash while another defendant went to a party, and that he and another defendant transported $119,000 to a third defendant in Florida.

He now contends that only the last piece of evidence was actually admissible against him under the district court's order precluding the government's use of any evidence, to prove overt acts in furtherance of the conspiracy, if that evidence was not set forth in a "bill of particulars" before trial. In support of this contention, Arnold claims that the district court had always spoken as if "overt acts" and "conduct linking the defendant to the conspiracy" were the same thing.

In its written opinion, the district court relied upon a case then freshly decided by this court, *United States v. Dempsey*, 733 F.2d 392 (6th Cir.), *cert. denied*, 469 U.S. 983, 105 S.Ct. 389, 83 L.Ed.2d 323 (1984), for the proposition that it is not necessary to charge any overt act to convict a defendant of conspiracy under the statute involved in this case, 21 U.S.C. § 846 (1981). Previously, the law of this circuit had clearly distinguished between the element of a conspiracy charge requiring *membership* in the conspiracy and that requiring an *overt act* in furtherance of the conspiracy. *United States v. Thompson*, 533 F.2d 1006, 1009 (6th Cir.), *cert. denied*, 429 U.S. 939, 97 S.Ct. 353, 50 L.Ed.2d 308 (1976).

The upshot of *Dempsey*, which adopted in the Sixth Circuit what had already been the rule in most other circuits, was to render the entire dispute over whether the government had to reveal its "overt act" evidence before trial largely irrelevant, because defendants who are charged only with conspiracy need not be shown to have committed any overt acts to be convicted. Under *Dempsey*, the only contested issue in Arnold's case was whether he knowingly became a member of the conspiracy, and the court's order precluding proof of unparticularized overt acts was no impediment to proving membership.

Even if we were to grant that Arnold's counsel had no duty to take into account the budding majority rule that was adopted in *Dempsey* after Arnold's stipulation, defense counsel's first duty in representing a

criminal client is to know the elements of the offense charged. It is absurd to suppose an attorney should be permitted to rely on a trial judge's imprecise oral comments to alter the law applicable to his client. *Thompson* sufficed to clarify the distinction that Arnold claims was murky in the courtroom.

We conclude, therefore, that the trial court correctly construed the scope of Arnold's stipulation, which rendered the government's evidence admissible on the issue of membership in the conspiracy.

## IV.

■ Arnold contends that, even if the evidence employed to convict him was admissible, it was insufficient.

Once there has been a conviction in a criminal case, appellate courts are bound to view the totality of the evidence in the light most favorable to the Government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457 [469], 86 L.Ed. 680 (1942); *United States v. Dye*, 508 F.2d 1226, 1231 (6th Cir.1974). Concomitantly, all reasonable inferences must be drawn which are consistent with the verdict. *United States v. Scales*, 464 F.2d 371, 373 (6th Cir.1972). Inferential proof may be controlling where the offense charged is so inherently secretive in nature as to permit the marshalling of only circumstantial evidence. This is the norm in drug conspiracy prosecutions, *see, e.g.*, *United States v. Sin Nagh Fong*, 490 F.2d 527, 530 (9th Cir.1974).

. . . . .

This Court has long recognized that purely circumstantial evidence may be sufficient to sustain a conspiracy conviction. *United States v. Chambers*, 382 F.2d 910, 913 (6th Cir.1967). The permissible inferences to be drawn from such evidence need not be consonant only with an hypothesis of guilt, *United States v. Luxenberg*, 374 F.2d 241, 249 (6th Cir. 1967), providing that the totality of the evidence is substantial enough to support a finding of guilt beyond a reasonable doubt. By our own definition:

Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion. It is evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred.

*United States v. Martin*, 375 F.2d 956, 957 (6th Cir.1967).

*United States v. Green*, 548 F.2d 1261, 1266 (6th Cir.1977).

Even taking into account that there was no jury and no testimony at all in this case, we think the evidence we have described above creates a powerful inference that Arnold was clearly cognizant of and deeply enmeshed in the illegal activities of the conspiracy. The evidence was more than sufficient to support a conviction for conspiracy under 21 U.S.C. § 846 (1981).

## V.

■ The motion for dismissal filed on behalf of Pelfrey and Heberling focused almost exclusively upon § 3161(h)(1)(F) of the Speedy Trial Act. The government seeks to limit defendants on appeal to the theory of excluding time from the Speedy Trial time period set forth in their motion. In support of this view, the government cites *United States v. Copley*, 774 F.2d 728 (6th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1272, 89 L.Ed.2d 580 (1986).

The main issue in *Copley* was whether a federal indictment had been untimely under § 3161(b) of the Speedy Trial Act because a detainer requesting that defendant be turned over to federal custody after his release from state custody was equivalent to an arrest. On appeal, the defendant also sought to raise an issue unrelated to the timeliness of his indictment. This court disposed of the second contention as follows:

Defendant also argues that the government violated his right to receive notice of the detainer under 18 U.S.C. § 3161(j)(1)(B) and 18 U.S.C. § 3161(j)(2). We do not reach this issue, since defend-

ant did not raise it in the Court below, either in the pleadings or at the hearing. *Id.* at 731.

This case is quite different from *Copley*. Here, the defendants raised the timeliness issue below, and simply failed to develop all possible theories of non-exclusion that they now raise. The main reason for this was that the Supreme Court case of *Henderson v. United States*, 476 U.S. 321, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986), was decided long after their motion was filed, and *Henderson* altered the law adversely to the position they argued in their motion. It would be counterproductive to reject this appeal simply because defendants have elaborated upon their arguments for untimeliness since their motion was filed. We therefore proceed to the merits of appellants' argument that they are entitled to dismissal under the Speedy Trial Act.

## VI.

The basic rule of the Speedy Trial Act is this:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1) (1985). This rule is mitigated by various exclusions, including several that are pertinent here:

> The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:
>
> (1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to— ...
>
> (E) delay resulting from any interlocutory appeal;

> (F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion; ... and
>
> (J) delay reasonably attributable to any period, not to exceed thirty days, during
>
> which any proceeding concerning the defendant is actually under advisement by
>
> the court....
>
> (7) A reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted.
>
> (8)(A) Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial....

18 U.S.C. § 3161(h) (1985).

We note that there are two exclusions pertaining to pretrial motions. The first is the (h)(1)(F) exclusion for delay prior to hearing on or "prompt disposition" of a pretrial motion. In *United States v. Keefer*, 799 F.2d 1115 (6th Cir.1986), we followed *Henderson v. United States*, 476 U.S. 321, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986), in holding exclusion of the time prior to hearing to be automatic, not limited by any "reasonableness" requirement. All time between the filing of a motion and the conclusion of a hearing on that motion, if there is one, is excluded.

The other pretrial-motion exclusion is found in subsection (h)(1)(J), which excludes a maximum of 30 days during which a "proceeding concerning the defendant" is "actually under advisement by the court." This provision creates a presumption of 30 excludable days for either considering a motion after a hearing has been held, or for considering a motion which does not

require a hearing. This presumption is rebutted if, within the 30–day period, the motion is granted or denied, or if the record shows objectively that the motion is not under advisement. This would ordinarily be the case, for example, if the court expressly declined to consider the merits of a motion until after the occurrence of a certain date or event. This would *not* be the case, however, if the anticipated event were the filing of post-hearing briefs, for the Supreme Court has held that:

> [S]ubsection (F) excludes time after a hearing has been held where a district court awaits additional filings from the parties that are needed for proper disposition of the motion.

*Henderson*, 476 U.S. at ——, 106 S.Ct. at 1877, 90 L.Ed.2d at 309.

### VII.

■ The government seeks initially to preclude detailed analysis by suggesting that, because motions for severance were first filed on December 16, 1982, and the last decision by the trial court on severance motions came on April 5, 1984, all of this time must be excluded. If this entire period is excluded, less than 70 pretrial days remain, so further analysis is unnecessary.

■ This argument fails principally because it omits to mention that the motions decided in 1984 were different from the motions filed in 1982. At least once along the way, in June of 1983, the trial court decided all then-pending pretrial motions. The Speedy Trial Act does not authorize pairing the date on which one motion was filed with the date a different motion was resolved in order to augment the exclusionary effect of both motions. We are therefore obligated to assess defendants' claims in detail.

### VIII.

Because § 3162(a)(2) of the Act places the burden of supporting a motion for dismissal on the defendant, the starting point for analysis must be those time periods that defendants claim as non-excludable pretrial time. In this case, defendants have carried their initial burden by setting forth six periods of what they claim is non-excludable time, totaling 109 days, well over the 70–day limit. In their briefs, they have sought to show how the various exclusions claimed by the government in fact do not apply.

■ First, defendants claim 33 days of non-excludable time between October 27, 1982, and November 28, 1982. The government concedes 9 of these days, the only days the government does concede, but challenges the others on the strength of § 3161(c)(1), which says that the pretrial period starts when the defendant makes an initial court appearance, and § 3161(h)(7), which, while not clearly relevant on its face, has been taken to mean that proceedings involving a codefendant can toll the period.

The Court in *Henderson* stated, on the strength of (h)(7), that: "All defendants who are joined for trial generally fall within the speedy trial computation of the latest codefendant." 476 U.S. at —— n. 2, 106 S.Ct. at 1873 n. 2, 90 L.Ed.2d at 304 n. 2. Because the last defendants to appear appeared on November 20, 1982, and one of these remained joined with these appellants until the day of their "trial," when he pleaded guilty, the pretrial period for all defendants started on November 20, not October 27. The government is correct in conceding only 9 days of this first period.

■ Second, defendants claim 19 days between June 2, 1983, and June 20, 1983. During this period, all motions pertaining to these defendants had been resolved, but there were still motions pending pertaining to another defendant, Kahelin. Under the "proceeding involving a codefendant" principle of § 3161(h)(7), the Kahelin motions should toll the period for all defendants then joined with him. Defendants assert, however, that even the Kahelin motions had actually been decided by June 2, so their formal resolution on June 20 is irrelevant to whether the motions were "actually under advisement."

■ We reject this analysis. A written order dated May 24, 1983, stated that the

court was taking the Kahelin motions under advisement at that time. Subsection (J) creates a presumption that the court has 30 days to consider a motion. The first public sign that the court had resolved the Kahelin motions came in its written order on June 20. Although subsection (J) limits exclusion to the period when the motion is "actually under advisement by the court," we decline to guess at when the court must have resolved these issues in its own mind. We take the "actually under advisement" language simply to mean that there is no 30–day exclusion if a motion is actually granted, denied, or set aside in less than 30 days. Therefore, the June 2–20, 1983, period must be excluded.[1]

Defendants' third claim is for 3 days between June 21 and June 23, 1983. We agree that this period is non-excludable. The exclusion for considering pretrial motions ended on June 20, when they were all decided. Even if, theoretically, there were still motions pending dealing with severance of defendants, these were, as the government concedes, not under advisement at this time. Even assuming that the court held a severance motion hearing in 1984 does not make this time excludable, because the issues resolved in 1984 were not the same ones awaiting decision in 1983. The June 21–23, 1983, period must be included.

The government filed notice of its interlocutory appeal on June 24, 1983. Defendants' fourth claim is that the week after the appeal was filed is nonexcludable because the trial court refused to order a stay. However, there is an *automatic* exclusion for any delay resulting from an interlocutory appeal. § 3161(h)(1)(E). This exclusion is not premised upon trial court action staying trial proceedings. We therefore reject defendants' claim that the 7 days between June 24 and June 30, 1983, should be included.

Fifth, defendants claim 24 days between February 28 and March 22, 1984. The appeal mandate was handed down on February 28, 1984, and on March 6 the court asked for additional memoranda on the motions for severance that were filed while the interlocutory appeal was going on. The last memorandum was received on March 13. The court's ruling came on April 5. Several of the nine remaining defendants then joined with these appellants for trial pled guilty during this period, thus again altering the complexion of this issue.

The government contends that there was a telephone conference on March 28, which was a hearing on the severance motions. If there was a hearing, followed by a brief period of "advisement," then this whole period is excluded under subsection (F) and subsection (J). We reject this analysis because we find no reference in the court docket, or elsewhere in the record, to such a hearing. We therefore disagree with the government's view that all 24 days must be excluded.

Because we find no record of a severance hearing in 1984, and because the severance motions had been pending for more than 30 days by then, the period when the court was awaiting briefing on this issue is not excludable. However, we agree with the government that the time between March 13, when the court had all the requested papers, and April 5, when the decision was announced, should be excluded as the actual advisement period. Thus, the non-excludable period here is the 12 days of March 1 through March 12, 1984.

Finally, defendants claim 23 days between March 31 and April 22, 1984. The first week of this period, until April 5, is excludable for reasons we have just discussed. Defendants filed their motion for dismissal under the Speedy Trial Act on March 23, 1984. The government filed a brief in opposition on March 30. Unless the court announced a decision on this mo-

---

1. The district court granted a continuance, spanning the period of April 29–June 20, 1983. This continuance was based on findings, made pursuant to § 3161(h)(8), that the "interests of justice" demanded that this time be excluded. Because we consider this period excludable on other grounds, we need not address the sufficiency of the district court's April 29 findings. Similarly, we will not assess the "interests of justice" findings made on July 5, 1983.

tion earlier, the presumption of a 30–day advisement period governs under § 3161(h)(1)(J). The first public announcement, however, came on April 23, the day the cases were submitted for trial. We cannot presume, as defendants suggest, that the trial court never actually considered this issue. Thus, all of this period is excludable.

In sum, we consider only 24 days of the 109 claimed by defendants actually to be non-excludable pretrial time under the Speedy Trial Act:

1) November 20–28, 1982 (9 days);
2) June 21–23, 1983 (3 days); and
3) March 1–12, 1984 (12 days).

While it is regrettable that these defendants were required to await trial for over 19 months after their indictment, most of this period was properly excludable under one or another of several exclusions built into the framework of the Speedy Trial Act. Their motion for dismissal under § 3162(a)(2) of the Act was therefore properly denied.

### IX.

The convictions appealed from are AFFIRMED.