50 F.3d 11
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
John BURRELL, Defendant-Appellant.
 No. 94-3058.
 United States Court of Appeals, Sixth Circuit.
 March 16, 1995.
 
 Before: WELLFORD, BOGGS, and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 John Burrell appeals his conviction for embezzlement of labor union funds, claiming there was insufficient evidence to sustain his conviction. A grand jury indicted Burrell for various acts of misconduct while president of Local 7A of the United Food and Commercial Workers Union. A jury convicted Burrell on six counts of embezzling labor union funds, a violation of 29 U.S.C. Sec. 501(c). The jury acquitted Burrell on four other counts. For the reasons set out below, we affirm the convictions with respect to counts one through four, and reverse the convictions with respect to counts seven and eight.
 
 
 2
 * In 1987, Burrell was trustee for Local 7A of the United Food and Commercial Workers Union while the Local was in receivership. Subsequently, the membership elected him President of Local 7A, and he took office January 1, 1988. Elected with Burrell was the eight member executive board. The function of the board was to oversee operation of the Local and approve any unusual expenditures.
 
 
 3
 At some point in 1988, the prosecution maintains, Burrell told several executive board members that he was paying his health and welfare premiums "out of his own pocket." In fact, the Union paid Burrell's health insurance premium. In September 1988, as a result of his statement, the executive board voted to have the Local pay for Burrell's health and welfare premiums. Burrell would receive an extra $80.30 per week out of Local funds. Subsequently, Burrell directed the Local staff to issue three checks as retroactive reimbursement for health and welfare premiums. Later, Burrell directed the staff to add the money to his salary every week.
 
 
 4
 The prosecution also maintains that the Burrell took more than his allotted vacation. Burrell told a Department of Labor employee that he was entitled to four weeks of vacation. Furthermore, other union members testified that under the collective bargaining agreement, the president received four weeks of vacation. Burrell took an extra week of vacation for each year he ran the Local. That is, in 1988 he took one week of vacation and four weeks of pay in lieu of vacation. In 1989, he took two weeks of vacation and three weeks of pay in lieu of vacation.
 
 II
 
 5
 In challenging a guilty verdict through a claim of insufficiency of evidence, Burrell bears a heavy burden. United States v. Vannerson, 786 F.2d 221, 225 (6th Cir.), cert. denied, 476 U.S. 1123 (1986). The standard of review to be applied by this court is whether, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Bourjaily, 781 F.2d 539, 544 (6th Cir.1986), aff'd, 483 U.S. 171 (1987).
 
 
 6
 In considering the evidence, the court must view both circumstantial and direct evidence in a light most favorable to the prosecution. United States v. Hofstatter, 8 F.3d 316 (6th Cir.1993), cert. denied, 114 S.Ct. 1101 (1994). Furthermore, the application of this standard requires the court to consider all reasonable inferences from the evidence in favor of the prosecution. United States v. Gibson, 675 F.2d 825, 829 (6th Cir.), cert. denied, 459 U.S. 972 (1982).
 
 
 7
 Where witness testimony is part of the prosecution's case, credibility is an issue within the province of the jury. United States v. Schultz, 855 F.2d 1217, 1221 (6th Cir.1988); United States v. Pelfry, 822 F.2d 628, 632 (6th Cir.1987). However, evidence that "requires a leap of faith in order to support a conviction will not suffice." United States v. White, 932 F.2d 588, 590 (6th Cir.1991).
 
 III
 
 8
 Sufficient evidence supports the convictions on counts one through four of the indictment; embezzling Local funds by taking duplicate payment for health insurance premiums. Burrell admits receiving the duplicate "health insurance" payments. Furthermore, Burrell admitted that he was not paying his own health insurance premiums. Three board members, Kasper Meece, Jesse Bundy, and Dale Adams, testified that they were under the impression that Burrell was paying his own premiums. Both Meece and Bundy testified that Burrell told the board that he was paying the premiums out of his own pocket. Admittedly, Meece also referred to the amount that Burrell would get to keep as a raise, resulting in some confusion.[1] Furthermore, the board meeting minutes state, under "New Business," that "Leon Mills motioned the local will pay health and welfare for the president, seconded by Kasper Meece; motion carried." Of the other board members, two had no memory of the issue and one arrived at the meeting late. Paul Huy was the only board member who testified that the payment was a raise. However, the minutes list him as absent from the meeting, and he never received the customary thirty-dollar fee for attending.
 
 
 9
 In his testimony, Burrell argued that the minutes were incorrect. He implies that the members who testified that he told them that he was paying his own premiums were lying. Furthermore, he testified that the board called the money payment for health insurance to prevent the membership from getting angry over his high salary.
 
 
 10
 A rational jury could conclude that Meece and Bundy were correct in their recollection that Burrell told them he was paying his own premiums. The misrepresentation made by Burrell would allow a rational jury to infer that he had intended to deceive the board and received the duplicate "health insurance premiums" with the intent to defraud the union. Therefore, we affirm the convictions with respect to counts one through four of the indictment.
 
 IV
 
 11
 There is insufficient evidence with respect to the convictions on counts seven and eight of the indictment; embezzling Local funds by taking an extra week of vacation twice. No rational juror could conclude that Burrell took the extra vacation with the intent to defraud the union. There is no doubt that Burrell took a total of five weeks of vacation and compensation. In 1988, he took one week of vacation and four weeks of pay in lieu of vacation. In 1989, he took two weeks of vacation and three weeks of pay in lieu of vacation. Nor is there any reasonable dispute about the amount of time Burrell was entitled to. Notwithstanding his statements to the contrary, Burrell admitted to the Department of Labor and on the witness stand that he was entitled to four weeks vacation.
 
 
 12
 The first secretary of Local 7A testified that she did not know how much vacation Burrell received, and that she relied on him to keep track of his own vacation time. The second secretary testified that she also did not know how much vacation Burrell received and that she kept no record of his vacations or paychecks taken in lieu of vacations. Burrell sharply contested the testimony that he was responsible for keeping track of his own vacation time.
 
 
 13
 Assuming Burrell was responsible for keeping track of his own vacation time, there simply is no evidence that he took the extra week in each year with the intent to defraud the Local. To conclude that, because Burrell was responsible for keeping track of his time and did not, he therefore must have taken the extra time with an intent to defraud the union is just the type of "leap of faith" that this Circuit has firmly rejected. Based on a review of the entire record, no rational juror could conclude that Burrell took the extra week of vacation each year with the intent to defraud the Local. Therefore, we reverse the convictions for counts seven and eight of the indictment.
 
 V
 
 14
 Burrell's convictions with respect to counts one through four are AFFIRMED, and with respect to counts seven and eight are REVERSED. Because both parties agree that the reversal will have no effect on Burrell's sentence, we do not remand for resentencing.
 
 
 
 [1]
 The confusion stems from his statement that the board intended to assume payment of the premiums and let Burrell "keep the rest as a raise." However, a careful reading of his testimony reveals that Meece thought that Burrell was getting paid $1,000 a week, and then paid approximately $80 a week for his health insurance out of his pocket. The board intended to assume payment of the $80, and allow Burrell to keep the money he had been paying for health insurance as a "raise." However, Burrell was not paying the $80 a week. In effect, the board intended the raise to be from $920 to $1000, net, but Burrell was already receiving $1000 net