UNITED STATES of America,
Plaintiff–Appellee,

v.

Michael NELSON, Defendant–Appellant.

No. 90–3121.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 14, 1990.
Decided Dec. 18, 1990.

Ronald B. Bakeman, Asst. U.S. Atty. (argued), Cleveland, Ohio, for plaintiff-appellee.

Alan C. Rossman (argued), Cleveland, Ohio, for defendant-appellant.

Before KEITH and BOGGS, Circuit Judges; and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Defendant-appellant Michael Nelson appeals his multiple-count cocaine-trafficking conviction and sentence. For the following reasons, we affirm Nelson's conviction and sentence.

## I.

On September 20, 1988, defendant-appellant Michael Nelson ("Nelson") was named in seven counts of an eleven-count superceding indictment. Stephen Nelson, Demetrious Nelson, Curtis Davis, Joseph Parker, "Teno," and "J.R." were also named in the superceding indictment. Count I of the superceding indictment charged the seven defendants with "unlawfully, willfully, knowingly, and intentionally" conspiring to "distribute a mixture or substance containing a detectable amount of cocaine and to possess cocaine with the intent to distribute said substance" within 1000 feet of a school from January, 1988 until July 20, 1988 in violation of 21 U.S.C. §§ 841(a)(1) and 845a. The first count of the indictment further charged that "[i]t was the objective of said conspiracy for Michael Nelson to obtain bulk quantities of cocaine from sources outside the State of Ohio, and to manage and supervise the distribution of said cocaine once brought into the Cleveland, Ohio, area."

The superceding indictment alleged twenty-one overt acts committed in furtherance of the conspiracy (nine directly implicating Nelson):

1. On May 2, 1988, Michael Nelson met Mack Brown (who at all times referred to herein, was acting in an undercover capacity) at Vices [Nightclub] and dis-

cussed arrangements to deliver a half (½) ounce of cocaine.

2. On May 4, 1988, Michael Nelson and Mack Brown used the telephone to discuss the delivery of one-half (½) ounce of cocaine.

3. Subsequently, and still on May 4, 1988, Michael Nelson, Curtis Davis and Bernard [last name unknown] arrived at 55th and Cedar, Cleveland, Ohio, and met with Mack Brown. Mack Brown paid Michael Nelson $620.00 for one-half (½) ounce of cocaine. Following the receipt of said $620.00, Michael Nelson instructed Mack Brown to go to Vices and to wait for the delivery of cocaine.

5. On May 6, 1988, Michael Nelson met Mack Brown at Vices where Nelson received $1,200 from Mack Brown for one (1) ounce of cocaine. Following receipt of the $1,200, Michael Nelson instructed Mack Brown to wait in his vehicle in front of Vices for delivery of the cocaine.

7. On May 10, 1988, Michael Nelson met Mack Brown inside Vices and agreed that Mack Brown would pay Nelson $2,300 for two (2) ounces of cocaine. Pursuant to instructions from Michael Nelson and while inside Vices, Brown gave the $2,300 to Curtis Davis.

9. On May 31, 1988, pursuant to instruction from Michael Nelson, Mack Brown went to Vices where he handed Nelson $5,000, the previously agreed upon price for five (5) ounces of cocaine.

19. On July 20, 1988, Mack Brown met Michael Nelson inside Vices to discuss the sale of kilogram quantities of cocaine by Michael Nelson to Mack Brown. Michael Nelson searched Brown, shortly after Brown's arrival at Vices, to determine whether Brown was wearing a transmitter.

20. Subsequently, and still on July 20, 1988, Michael Nelson agreed to distribute one and one-half (1½) kilograms of cocaine to Mack Brown for $40,000 on the condition that Brown pay for the cocaine prior to its delivery.

21. Finally, and still on July 20, 1988, Michael Nelson met with a Special Agent of the Federal Bureau of Investigation who, unknown to Nelson, was acting in an undercover capacity, and in an effort to encourage the Special Agent to advance the $40,000 for the 1½ kilograms of cocaine, Michael Nelson stated that he was one of the hottest dope dealers in Cleveland, Ohio.

September 20, 1988 Superceding Indictment at 3–6.

Count II of the superceding indictment charged the appellant and Demetrious Nelson with distributing approximately fourteen (14) grams of cocaine "within 1,000 feet of the real property comprising a public secondary school" (East High School) on May 4, 1988, in violation of 21 U.S.C. §§ 841(a)(1) and 845a, and 18 U.S.C. § 2. Count III charged the appellant and "Teno" (last name unknown) with distributing twenty-eight (28) grams of cocaine "within 1,000 feet of the real property comprising a public secondary school" on May 6, 1988, in violation of 21 U.S.C. §§ 841(a)(1) and 845a, and 18 U.S.C. § 2.

Count IV of the superceding indictment charged the appellant, Curtis Davis and Demetrious Nelson with distributing fifty-six (56) grams of cocaine "within 1,000 feet of the real property comprising a public secondary school" on May 10, 1988, in violation of 21 U.S.C. §§ 841(a)(1) and 845a, and 18 U.S.C. § 2. Count V charged the appellant and Demetrious Nelson with distributing one hundred forty (140) grams of cocaine "within 1,000 feet of the real property comprising a public secondary school" on May 31, 1988, in violation of 21 U.S.C. §§ 841(a)(1) and 845a, and 18 U.S.C. § 2.

Count VI charged the appellant, Stephen Nelson and Joseph Parker with distributing fifty-six (56) grams of cocaine "within 1,000 feet of the real property comprising a public secondary school" on June 17, 1988, in violation of 21 U.S.C. §§ 841(a)(1) and 845a, and 18 U.S.C. § 2. Count VIII charged Nelson with "knowingly and intentionally" using a communication facility (a telephone) "to facilitate acts constituting a felony under Sections 846 and 841(a)(1) of Title 21, United States Code" on May 4, 1988, in violation of 21 U.S.C. § 843(b).

Co-conspirator Davis testified for the government at Nelson's jury trial which commenced on August 29, 1989. Davis testified that he first started working for the appellant at the appellant's nightclub (Vices) in the fall of 1987. Davis testified that he observed "Teno" and "J.R." approach cars (and conduct what Davis believed to be drug sales) on the street in front of Vices in the fall and early winter of 1987. Davis further revealed that in December, 1987, he personally observed numerous bags of cocaine (and scales) located in a building owned by Nelson.

Davis testified that Nelson summoned the co-conspirators together in the spring of 1988 to discuss the distribution of cocaine. After assigning each co-conspirator a role in the cocaine distribution, Nelson discussed his plan to obtain cocaine through California contacts, adding that the cocaine would be kept out of Vices to avoid the government's seizure of the nightclub. After testifying that it was common knowledge that Nelson organized and managed the distribution of cocaine ("Well, it was, you know, just the way things—the day-to-day operation, everybody knew exactly that he was in charge of everything."), Davis revealed that Nelson had flown to California on two occasions to purchase undetermined quantities of cocaine that were brought back to Cleveland by a "mule" known only as "Karen."

Nelson's friend, Mack Brown, agreed to cooperate with the government (by making controlled purchases of cocaine from Nelson) in the spring of 1988. Each of Brown's controlled cocaine purchases was recorded and played for the jury. After engaging in a monitored telephone conversation on May 4, 1988 (Count VIII), Nelson agreed to sell Brown one-half ounce of cocaine, and instructed Brown to meet him at East 55th and Cedar Road in Cleveland. Nelson and Davis met the informant, Brown, at the specified location. After accepting Brown's money, Nelson instructed Brown to drive to Vices' parking lot to obtain the cocaine from Nelson's brother, Demetrious. The cocaine weighed 12.36 grams.

On May 6, 1988, Brown telephoned Nelson to arrange for the purchase of an ounce of cocaine. Nelson instructed the informant to drive to Vices. Brown paid Nelson $1,200 for the ounce of cocaine after arriving at Vices. Brown then returned to his automobile and waited until "Teno" walked by and threw the cocaine inside the car. The cocaine weighed 13.15 grams.

On May 10, 1988, Brown again drove to Vices after ordering two additional ounces of cocaine from Nelson. After paying Nelson $2,000, Demetrious Nelson handed Brown 55.70 grams of cocaine. Similarly, on May 31, 1988, Brown paid Nelson $5,000 for five ounces of cocaine and waited in his car in front of Vices until "J.R." delivered 133.71 grams of cocaine.

Nelson's district court jury trial commenced on August 29, 1989. On September 6, 1989, the jury found Nelson guilty of: conspiracy to distribute cocaine within 1000 feet of a school (Count I); four counts of cocaine distribution within 1000 feet of a school (Counts II, III, IV and V); and using a telephone to facilitate the distribution of cocaine (Count VIII).

Following a January 12, 1990 sentencing hearing, the district court judge issued his "Memorandum of Opinion on Sentencing and Statement of Reasons" on February 27, 1990, which set forth the judge's findings:

1. Curtis Davis was a credible witness and his testimony persuasive.

2. The amount of cocaine involved in the conspiracy in Count I of the indictment is between five hundred grams (500g) and two kilograms (2Kg), which corresponds to a Base Offense Level of 26 under United States Sentencing Commission, *Guidelines Manual*, §§ 2D1.-1(a)(3) and 2D1.4(a) (Nov.1989).

3. The jury found Nelson guilty of committing the instant offenses within one thousand (1000) feet of a school; accordingly, the Base Offense Level is increased by two (2) levels pursuant to U.S.S.G. § 2D1.2(a)(1).

4. Nelson organized and acted as leader of the conspiracy, and the conspiracy included at least five (5) persons; accord-

ingly, under U.S.S.G. § 3B1.1, the Base Offense Level is increased by four (4) levels.

5. Nelson did not clearly demonstrate a recognition and affirmative acceptance of responsibility for his criminal conduct in organizing and leading the conspiracy for which he was found guilty; therefore, a two (2) level reduction in the Base Offense Level pursuant to U.S.S.G. § 3E1.1(a) is not warranted.

6. Nelson is indigent and unable to pay any fine potentially imposed by the court.

District Court's February 27, 1990 Memorandum of Opinion on Sentencing and Statement of Reasons at 1–3.

After determining that the sentencing guidelines dictated 168–210 months (offense level 32; criminal history category IV), the district court judge sentenced Nelson to 210 months in prison (120 months for the conspiracy conviction; 78 months for each cocaine distribution conviction to run concurrently; and 12 months for using a telephone to facilitate acts constituting a felony). The district court judge noted the following reasons for imposing the 210 month sentence:

1. Nelson engaged in the instant offense within two (2) years after he was released from custody on a manslaughter conviction.

2. Nelson engaged in the instant offenses while he was on parole.

3. Nelson held a leadership role in the conspiracy.

4. Taped conversations between Nelson and others, introduced into evidence at trial, established his sophistication in the distribution of cocaine.

District Court's February 27, 1990 Memorandum of Opinion on Sentencing and Statement of Reasons at 4.

Nelson thereafter filed a timely notice of appeal.

## II.

### A.

■ Though the jury found Nelson guilty of conspiring to distribute and possess with the intent to distribute less than 500 grams of cocaine, the district court judge determined that "[t]he amount of cocaine involved in the conspiracy in Count 1 of the indictment is between five hundred grams (500g) and two kilograms (2Kg)." District Court's February 27, 1990 Memorandum of Opinion on Sentencing and Statement of Reasons at 1. Nelson argues that the district court erred by not adhering to the jury's cocaine-quantity determination. This argument is without merit.

The Sixth Circuit recently held:

We agree with the Eighth and the Third Circuits that section 841(b) sets forth penalty provisions only and not separate "lesser included" offenses. As such, the sentencing judge, not the jury, has the prerogative to make a determination of the quantity of drugs involved in the scheme and to sentence accordingly.... Because section 841(b) is a penalty provision only, a determination of the quantity of cocaine by a preponderance of the evidence likewise satisfies due process in this case. The district court is not bound by the jury's verdict in this case despite the jury's finding as to the quantity of drugs involved in the conspiracy or scheme. The district court committed error both by treating 21 U.S.C. § 841(b) as a statute involving lesser included offenses and by considering itself bound at sentencing by the jury's findings.

. . . .

The defendant need not be convicted of conspiring to distribute over five kilograms of cocaine for the judge to be able to make such a determination at sentencing.

*United States v. Moreno*, 899 F.2d 465, 473–74 (6th Cir.1990). Accordingly, the district court judge did not err by disregarding the jury's cocaine-quantity determination when sentencing the appellant.

■ Nelson argues, however, that there was no credible evidence that the conspiracy involved more than 500 grams (and less than 2 kilograms) of cocaine. This argument is similarly without merit. The United States Sentencing Guidelines provide:

Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level ... shall be determined on the basis of ... all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense[.]

United States Sentencing Commission, *Guidelines Manual*, § 1B1.3(a)(1) (Nov. 1989). Though the appellant concedes that he sold 268.72 grams of cocaine to Brown (the government informant), Nelson contests the other cocaine amounts considered by the district court at the appellant's sentencing: Davis' observation that an undetermined amount of cocaine was being stored in a building owned by the appellant; Nelson's instruction to Demetrious Nelson to locate one kilogram of cocaine for a customer; Nelson's trips to California to purchase an undetermined amount of cocaine; the appellant's instructions to Davis to move cocaine, a small refrigerator, and a scale from Demetrious' home to Davis' home; and Nelson's instructions to Brown to check with certain persons regarding the purchase of two kilograms of cocaine. *See* U.S.S.G. § 2D1.4, comment. (n. 1) ("If the defendant is convicted of a conspiracy that includes transactions in controlled substances in addition to those that are the subject of substantive counts of conviction, each conspiracy transaction shall be included with those of the substantive counts of conviction to determine scale. If the defendant is convicted of an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount.").

■ The prosecution bears the burden of establishing the amount of cocaine (for sentencing purposes) by a preponderance of the evidence. *United States v. Moreno*, 899 F.2d at 473. Because the district court found Davis' testimony regarding Nelson's

numerous cocaine dealings to be credible, the district court's determination that the conspiracy involved between 500 grams and 2 kilograms of cocaine was not clearly erroneous. *See* Fed.R.Civ.P. 52(a) (district court's findings of fact should not be reversed unless clearly erroneous). Nelson's first assignment of error is therefore without merit.

### B.

■ The Guidelines allow a two-level reduction in total offense level "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." U.S. S.G. § 3E1.1(a). The Sixth Circuit previously announced the standard of review applicable to a district court's "acceptance of responsibility" determination:

Whether or not a defendant has accepted responsibility for his crime is a factual question. The district court's determination of that question, like its findings with respect to manager status, and minimal participant status, enjoys the protection of the "clearly erroneous" standard. Because the trial court's assessment of a defendant's contrition will depend heavily on credibility assessments, the "clearly erroneous" standard will nearly always sustain the judgment of the district court in this area. Indeed, the guidelines specifically state that "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review and should not be disturbed unless it is without foundation."

*United States v. Wilson*, 878 F.2d 921, 923 (6th Cir.1989) (quoting *United States v. Thomas*, 870 F.2d 174, 176 (5th Cir.1989) (citations omitted)).

Nelson argues that the district court's denial of an acceptance of responsibility reduction was without foundation. Specifically, Nelson argues that he is entitled to the acceptance of responsibility reduction because he admitted selling cocaine to the government informant. The district

court's refusal to allow the two-level reduction, however, was due to Nelson's failure to accept responsibility for his *role* in the conspiracy:

> Nelson did not clearly demonstrate a recognition and affirmative acceptance of responsibility for his criminal conduct in organizing and leading the conspiracy for which he was found guilty; therefore, a two- (2-) level reduction in the Base Offense Level pursuant to U.S.S.G. § 3E1.1(a) is not warranted.

District Court's February 27, 1990 Memorandum of Opinion on Sentencing and Statement of Reasons at 3.

Because Nelson failed to acknowledge, or accept responsibility for, his role in the conspiracy, the district court judge's decision to deny Nelson an acceptance of responsibility reduction is not clearly erroneous. Nelson's second assignment of error is therefore without merit.

### C.

Nelson submits that his conviction should be reversed because he was entrapped by the government's agents. In *Mathews v. United States*, 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988), the Supreme Court noted that it had "consistently adhered to the view ... that a valid entrapment defense has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Id.* at 62–63, 108 S.Ct. at 886 (citations omitted). Similarly, the Eighth Circuit held that "[t]o be entitled to an entrapment instruction, [the defendant] needed to come forward with evidence that government agents implanted criminal design in his mind and induced him to commit the offense." *United States v. Felix*, 867 F.2d 1068, 1074 (8th Cir.1989) (citing *United States v. Kutrip*, 670 F.2d 870, 877 (8th Cir.1982)).

The Seventh Circuit has previously held that "a predisposed defendant is one who is ready and willing to commit an offense apart from government encouragement, and not an innocent person in whose mind the government implanted a disposition to commit an offense." *United States v. Lazcano*, 881 F.2d 402, 406 (7th Cir.1989) (citations omitted). The Seventh Circuit's analysis of a defendant's predisposition in an entrapment case examines five separate factors: (1) the character or reputation of the defendant; (2) whether the suggestion of the criminal activity was originally made by the government; (3) whether the defendant was engaged in criminal activity for a profit; (4) whether the defendant evidenced reluctance to commit the offense but was overcome by government persuasion; and (5) the nature of the inducement or persuasion offered by the government. *Id.* (citations omitted).

Notwithstanding Nelson's assertions to the contrary, the evidence clearly and unequivocally establishes that Nelson was predisposed to distribute (and possess with the intent to distribute) cocaine without any governmental inducement. Simply stated, the government agents did not entrap Nelson by merely presenting him the opportunity to sell the cocaine that he possessed. Because Nelson failed to prove both governmental inducement and lack of predisposition to commit the drug trafficking offenses, *see generally United States v. Shukitis*, 877 F.2d 1322, 1331 (7th Cir. 1989), the district court did not err by refusing to instruct the jury on the elements of entrapment. Nelson's third assignment of error is therefore without merit.

### D.

Though Nelson argues that a jury instruction regarding proof of an overt act was required, the Sixth Circuit has previously held that:

> An overt act, therefore, need not be charged in a § 846 conspiracy. If an overt act need not be charged, it need not be proved. If an overt act need be neither charged nor proved, there remains nothing about which to instruct on that issue.

*United States v. Dempsey*, 733 F.2d 392, 396 (6th Cir.) (quoting *United States v. Umentum*, 547 F.2d 987, 991 (7th Cir.1976), *cert. denied*, 430 U.S. 983, 97 S.Ct. 1677, 52 L.Ed.2d 376 (1977)), *cert. denied*, 469 U.S.

983, 105 S.Ct. 389, 83 L.Ed.2d 323 (1984). Accordingly, the Sixth Circuit concluded that:

> In fashioning a comprehensive answer to a pervasive problem, Congress chose to create a common law type offense of conspiracy, omitting charge and proof of an overt act as one of its elements. Thus, we agree with those courts which have held that it is not necessary to charge and prove an overt act in a prosecution under 21 U.S.C. § 846.

*United States v. Dempsey*, 733 F.2d at 396 (citation omitted).

Nelson's attempt to distinguish *Dempsey* from the instant action is without merit. Though no overt acts were charged in *Dempsey* (unlike the instant action), subsequent courts have held the difference to be inconsequential. In *United States v. Franco*, 874 F.2d 1136 (7th Cir.1989), the Seventh Circuit held:

> Under 21 U.S.C. § 846, the government is not required to allege or prove an overt act in furtherance of the conspiracy as is required under the general conspiracy statute, 18 U.S.C. § 371. The government had the burden of proving that a conspiracy existed and that Franco knowingly and intentionally joined it. The court's supplemental instructions merely reemphasized this point.
>
> This court has previously commented on whether the district court must instruct the jury concerning the extra paragraphs in an indictment that describe the objects and activities of the conspiracy. In *United States v. Williams*, [798 F.2d 1024, 1033, (7th Cir.1986),] the first paragraph of the indictment contained the conspiracy count. The seven unnumbered paragraphs that followed it alleged various overt acts of the coconspirators.... According to the *Williams* defendants, the paragraphs contained "essential elements" of the charge. We rejected their argument[.]
>
> Franco ignores *Williams* and fails to provide any authority to support his claim that unessential allegations contained in the count must be proven beyond a reasonable doubt.... The paragraphs numbered two through ten in his

indictment were not essential elements of the charge. Therefore the district court was correct in refusing to instruct the jury that the government must prove the allegations in paragraphs two through ten.

*Id.* at 1144 (citations omitted). *See also United States v. Pumphrey*, 831 F.2d 307 (D.C.Cir.1987) ("[E]xcess allegations in an indictment that do not change the basic nature of the offense charged need not be proven and should be treated as mere surplusage." *Id.* at 309).

Because the district court correctly concluded that a jury instruction regarding proof of an overt act was not necessary, Nelson's fourth assignment of error is without merit.

### E.

■ Nelson argues that "there was insufficient evidence to afford a substantial basis of fact that a conspiracy was formed to import and distribute bulk amounts of cocaine from out of state." Appellant's Brief at 30. When reviewing a sufficiency of the evidence claim we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt." *United States v. Ingrao*, 844 F.2d 314, 315 (6th Cir.1988) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original)). Furthermore, "this court does not sit as a trier of fact and may not enter into a *de novo* consideration of the evidence" in a sufficiency of the evidence claim. *United States v. Ayotte*, 741 F.2d 865, 867 (6th Cir.), *cert. denied*, 469 U.S. 1076, 105 S.Ct. 574, 83 L.Ed.2d 514 (1984).

The evidence clearly indicates that Nelson: organized the cocaine-trafficking conspiracy; assigned various duties to his coconspirators; twice flew to California to obtain "bulk quantities" of cocaine; and, distributed cocaine to a government informant on numerous occasions. Because the government presented substantial evidence regarding Nelson's participation in the co-

caine-trafficking conspiracy, Nelson's fifth assignment of error is meritless.

### F.

▆ Nelson argues that the actual amount of cocaine distributed on May 6, 1988 (13.15 grams) does not justify his conviction under Count III (charging Nelson with distributing 28 grams of cocaine). The appellant's argument is without merit, however, because "the quantity of cocaine is not an element of the offense of conspiracy to distribute cocaine" that must be proved beyond a reasonable doubt. *United States v. Moreno*, 899 F.2d at 474. Furthermore, the 13.15 grams distributed by Nelson sufficiently approximated the 28 grams ordered (and purchased) by the government informant. Because the amount of cocaine listed in Count III of the indictment sufficiently approximated the actual amount of cocaine distributed by Nelson on May 6, 1988 (and because the discrepancy did not prejudice the appellant's sentence), Nelson's sixth assignment of error is without merit.

### G.

▆ Federal Rule of Criminal Procedure 32(c)(3)(D) provides:

> If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing.

Fed.R.Crim.P. 32(c)(3)(D).

Specifically, Nelson argues that the district court failed to adequately explain its acceptance of responsibility, role in the offense, and drug quantity determinations. Contrary to the appellant's assertions, however, the district court judge entertained Nelson's contentions at a sentencing hearing held on January 12, 1990, and resolved the disputed facts on February 27, 1990:

> 2. The amount of cocaine involved in the conspiracy in Count 1 of the indictment is between five hundred grams (500g) and two kilograms (2Kg), which corresponds to a Base Offense Level of 26 under United States Sentencing Commission, *Guidelines Manual*, §§ 2D1.-1(a)(3) and 2D1.4(a) (Nov.1989).
>
> ....
>
> 4. Nelson organized and acted as leader of the conspiracy, and the conspiracy included at least five (5) persons; accordingly, under U.S.S.G. § 3B1.1, the Base Offense Level is increased by four (4) levels.
>
> 5. Nelson did not clearly demonstrate a recognition and affirmative acceptance of responsibility for his criminal conduct in organizing and leading the conspiracy for which he was found guilty; therefore, a two- (2-) level reduction in the Base Offense Level pursuant to U.S.S.G. § 3E1.1(a) is not warranted.

District Court's February 27, 1990 Memorandum of Opinion on Sentencing and Statement of Reasons at 1–3.

Notwithstanding the appellant's assertions to the contrary, the district court clearly satisfied Fed.R.Crim.P. 32(c)(3)(D)'s requirements. Nelson's seventh assignment of error is therefore without merit.

### H.

▆ Though Nelson argues that the district court judge should have recused himself, the Sixth Circuit has previously held that:

> The law with regard to recusal under section 455 is straightforward and well-established in the Sixth Circuit. A district judge is required to recuse himself " 'only if a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.' " This standard is *objective* and is not based "on the subjective view of a party."
>
> Prejudice or bias must be personal, or extrajudicial, in order to justify recusal. "Personal" bias is prejudice that emanates from some source other than par-

ticipation in the proceedings or prior contact with related cases. Personal bias arises out of the judge's background and associations. The critical test is whether the alleged bias "stems from an extrajudicial source and results in an opinion on the merits on some basis other than what the judge learned from his participation in the case."

*Wheeler v. Southland Corp.*, 875 F.2d 1246, 1251–52 (6th Cir.1989) (emphasis in original) (citations omitted).

Because Nelson's recusal claim focuses entirely on judicial matters arising from this action (denial of a motion, which was later granted, to vacate guilty plea; duration of sentence), the appellant clearly fails to meet the Sixth Circuit's "extrajudicial" requirement. Accordingly, Nelson's eighth assignment of error is without merit.

### III.

For the aforementioned reasons, we AFFIRM Nelson's conviction and sentence.