30 F.3d 135
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Frank RENFROE, Defendant-Appellant,
UNITED STATES of America, Plaintiff-Appellee,
v.
Wendell DANIELS, Defendant-Appellant.
 Nos. 93-2067, 93-2074.
 United States Court of Appeals, Sixth Circuit.
 Aug. 4, 1994.
 
 Before: MARTIN, NORRIS, and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 These two cases were remanded to the district court in December 1991 for reconsideration of the sentencing order. At this court's direction, the cases were held in abeyance pending release of our opinion in United States v. Gessa, 971 F.2d 1257 (6th Cir.1992) (en banc). Following the release of Gessa, the district judge filed an opinion and order, in which he reimposed the same sentences he had previously imposed on the defendants, finding that they were consistent in all respects with the pertinent holding in Gessa.
 
 
 2
 The question before the court now, as it was then, is whether the record supports the district court's determination of the amount of cocaine attributable to the defendants for the purpose of calculating their sentences under USSG Sec. 2D1.4(a). Because we conclude that the district court's determination that "at least 25 kilograms" of cocaine were attributable to each defendant is not supported by sufficient findings of fact under Gessa, we hold that a further remand is required.
 
 
 3
 In the fall of 1989, the FBI had under investigation a cocaine-distribution operation involving the defendants, Frank Renfroe and Wendell Daniels, and two additional co-conspirators. On October 25 and 26, 1989, the FBI used a confidential informant to make telephone calls to Daniels that were recorded by government agents. In those conversations, the confidential informant engaged Daniels in conversations about the possible sale to Daniels and his cohorts of large quantities of cocaine. For the most part, the conversations concerned the possibility that Daniels would buy 10 kilos of cocaine, at a price range of $19,000-$21,000 per kilo and then resell it on the streets of Detroit at $24,000-$26,000 per kilo. Daniels said that he and Renfroe could come up with as much as $50,000-$55,000 in "front money" for this purchase, and the informant, apparently playing along with the scheme, said that he would raise the rest of the funds necessary to make the buy.
 
 
 4
 The confidential informant also offered to locate another 15 kilos of cocaine and make it available to Daniels and Renfroe, but references to this additional amount were vague, and there were no specific plans to procure or produce it.
 
 
 5
 Despite the discussions in October concerning the possible sale of cocaine by the confidential informant to Daniels and Renfroe, no such transactions ever occurred. Instead, an FBI undercover agent, introduced to Daniels and Renfroe through the confidential informant, arranged to purchase cocaine from the two defendants some five or six weeks later. As a result, on December 1, 1989, the agent bought half a kilogram of cocaine from Daniels, and on December 18, 1989, the same agent met with Daniels and Renfroe to purchase an additional five kilograms. However, in the interim between the two transactions, the price of the cocaine being offered by the defendants had gone up, and the undercover agent had money enough to purchase only four kilograms.
 
 
 6
 Immediately after this second transaction, the defendants were placed under arrest. At that time, the fifth kilo of cocaine was found in the car of a co-conspirator that was parked at Daniel's residence.
 
 
 7
 The defendants were subsequently convicted of the possession of cocaine with the intent to distribute, in violation of 21 U.S.C. Sec. 841(a) (and 18 U.S.C. Sec. 2), and of conspiracy to distribute cocaine in an amount equal to or greater than five kilograms, in violation of 21 U.S.C. Sec. 846. As a result, the district court sentenced Daniels to 25 years imprisonment and Renfroe to 24 1/2 years imprisonment. Both sentences were based on the district court's attribution of 25 kilos to the defendants under USSG Sec. 2D1.4(a), which provides that a defendant convicted of conspiracy or an attempt to commit an offense involving a controlled substance is subject to be sentenced "as if the object of the conspiracy or attempt had been completed." Application Note 1 to this provision of the Sentencing Guidelines further provides:
 
 
 8
 If the defendant is convicted of an conspiracy that includes transactions in controlled substances in addition to those that are the subject of substantive counts of conviction, each conspiracy transaction shall be included with those of the substantive counts of conviction to determine scale. If the defendant is convicted of an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount. However, where the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation the amount that it finds the defendant did not intend to produce and was not reasonably capable of producing ...
 
 
 9
 In sentencing Renfroe and Daniels, the district court relied upon the transcripts of the telephone conversations recorded on October 25 and 26, 1989, in which the confidential informant and the defendants discussed the possibility of a purchase by the defendants of a large amount of cocaine. There is not much question that Daniels and Renfroe were prepared to purchase up to ten kilos of cocaine. There is, however, considerable doubt about the sufficiency of the record to support the district court's finding that the defendants can be held responsible for more than 25 kilos of cocaine.
 
 
 10
 Renfroe and Daniels were tried jointly but were sentenced at separate hearings. At the sentencing hearings, in support of its contention that the defendants were responsible for 25 kilos, the prosecutor cited only two isolated passages from transcripts of the October telephone conversations:
 
 
 11
 At the top of the page, the confidential informant indicates that after the ten kilos which was [sic] discussed earlier are resolved: "And I grab the other 15." The special agent who interpreted this, indicated it was another 15 kilograms of cocaine after the first ten would be sold off. The confidential informant also specifically states directly to ... Renfroe ..."And them, and them, will be comin' straight to y'all?" ... Renfroe says "Huh?" The confidential informant then says: "I say soon as I straighten these ten out, the other 15 will be coming straight to y'all." And ... Renfroe, ..., responds: "Yeah."
 
 
 12
 Additionally, at page six of the same transcript, ... Daniels says: "Bo, I won't, you just get 'em over here." The confidential informant then responds: "Well, I'm, I'm goin', I goin' to get 20, I'm gonna take ten now, I'm gonna give them the hundred." And then he goes on to indicate the manner in which the money will exchanged for the cocaine.
 
 
 13
 As to Daniels, the district court ultimately found as follows:
 
 
 14
 [T]he application note [to Sec. 2D4.1(a) ] indicates ... that the defendant shall be held responsible for the totality of the negotiated amount, unless the court determines ... two things,.... Number one, that the defendant didn't intend to purchase ... the negotiated amount, and that he wasn't reasonably capable of doing it.... this defendant was able to come up with five kilos of cocaine, and was about to obtain $100,000 for it in ... an hour and a half. Certainly, with a day or two notice, it wouldn't be unreasonable for him to come up with a fund to secure 25 kilograms, particularly in light of the fact that the confidential informant was going to be putting up some of the money, and the defendant himself specifically indicated ... that he had 50 to $55,000 that he was willing to put up. That in conjunction with ... Renfroe, they could put up that much money. And the confidential informant indicated that some of these kilograms of cocaine were going to be fronted to him based on those facts, and the other facts in the totality. It is certainly reasonable to believe that he could have come up with the money and the cocaine had he so desired. And everything indicates that he did so desire.
 
 
 15
 The district court ultimately concluded that Daniels "did in fact have the intent to carry out a 25 kilogram purchase. And he was reasonably capable of producing the funds and/or whatever else is necessary to accomplish that."
 
 
 16
 As to Renfroe, the district court held as follows:
 
 
 17
 I found in the prior hearing [Daniels ], I am making a finding in this case that the ... conspiracy in this case involved at least 25 kilograms of cocaine. The transcript and the records is [sic] very clear that this was the amount being discussed, at least once on the tape recording.
 
 
 18
 Both defendants appealed. This court, in an unpublished opinion, affirmed their convictions, but remanded for reconsideration of resentencing in light of United State v. Gessa, 971 F.2d 1257 (6th Cir.1992), which was then pending. After the Gessa opinion was released in August 1992, the district court reaffirmed both sentences, holding that the findings required by Gessa were made in the appellants' original sentencing hearing. The defendants again appealed, arguing that, contrary to the court's holding, their sentences were improper under Gessa.
 
 
 19
 This court reviews a district court's factual findings in the context of a sentencing hearing under a clearly erroneous standard. United States v. Sims, 975 F.2d 1225, 1242 (6th Cir.1992). Although the government need only prove the facts relevant to a sentencing decision by a preponderance of the evidence, United States v. Walton, 908 F.2d 1289, 1300 (6th Cir.1990), the government here bears the burden of proof because the amount of cocaine was a factor which increased the appellants' sentences. United States v. Nelson, 922 F.2d 311, 316 (6th Cir.1990).
 
 
 20
 Citing Gessa, the defendants argue that they cannot be held responsible for 25 kilos of cocaine, based on nothing more than the October telephone conversations, which they describe as "mere puffery." They further contend that, at most, they should be held liable for the four and one-half kilos actually sold to the undercover agent on December 1 and December 18. As a "fall-back position," they contend that they cannot be held liable for more than ten kilos of "conversational cocaine," bringing the total quantity attributable to them under USSG Sec. 2D1.4(a) to 14 1/2 kilos.
 
 
 21
 The government, on the other hand, would have us hold the defendants responsible for the full 25-kilo amount found by the district judge. At the very least, the government contends, Renfroe and Daniels are liable for the four and one-half kilos sold to the agent, the additional kilo found in the co-conspirator's car at the time the second sale was made, and ten of the 25 kilos discussed during the October telephone conversations, for a total of 15 1/2 kilos.
 
 
 22
 There is no question that the arithmetic in this case has a dramatic effect on the sentences to be imposed on Renfroe and Daniels. Under the sentencing guidelines, the attribution of amounts of cocaine up to, but not including, five kilograms produces a base offense level of 30; from five up to 15 kilos, a level of 32; and from 15 to 50 kilos, a level of 34. USSG Sec. 2D1.1(c)(5)-(7).[1] The resulting length of incarceration can vary as much as 91 months.
 
 
 23
 After a careful review of the record, we conclude that the defendants are, beyond any possibility of doubt, responsible for the five and one-half kilos of cocaine that were sold or negotiated for sale with the FBI undercover agent in December 1989. They virtually concede responsibility for four and one-half kilos of that amount. The remaining kilo was not a part of the December 18 transaction only because the price had gone up and the agent did not, as it turned out, have enough money to purchase the full amount of cocaine he had bargained for. That kilo of cocaine is clearly covered by the language of Application Note 1 to USSG Sec. 2D1.4(a) ("the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount").
 
 
 24
 The question of attribution of the purely "conversational cocaine" that was the subject of discussion in the October telephone calls poses a more difficult question. The "negotiation," to the extent it existed, was for a purchase by the defendants and not a sale; hence, it cannot be said to have constituted the initiation of the conspiracy that culminated in the December transactions. At most, it was part of an overall conspiracy to distribute cocaine, as charged in the first count of the indictment against the two defendants. But as Daniels points out in his brief on appeal, as to the proposed purchase of cocaine from the government's confidential informant in October, "[t]here were no meetings arranged, no drop spots worked out, no details--it was just talk." Indeed, as to the 15 kilos of "conversational cocaine" that arguably constituted the "second installment" of the 25 kilos attributed to the defendants by the district court, there was virtually no talk at all, and what mention there was came primarily from the confidential informant. In this regard, the defendants make a persuasive argument that they should not be sentenced for hypothetical transactions that were injected into the record solely by government agents and were not otherwise adopted or acted upon by the defendants.
 
 
 25
 The major deficiency in this record is the absence of specific findings of fact (as opposed to conclusory statements) sufficient to establish that the defendants "intended to produce" and were "reasonably capable of producing" the amount of money necessary to purchase all 25 kilos of cocaine discussed in the October telephone conversations. We conclude that the record supports attribution of ten kilos of "conversational cocaine" to the defendants as a result of the October telephone calls, for a total attributable amount of 15 1/2 kilos. We therefore REMAND this case to the district court to permit sentencing within the appropriate range, based on this amount of cocaine.
 
 
 
 [1]
 This calculation is based on a criminal history category of I and a base offense level of 39. The appellant's base offense level was increased to 39 for reasons other than drug quantity