**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Alan Scott PARTRIDGE, Defendant–Appellant.**

No. 99–6493.

United States Court of Appeals, Sixth Circuit.

Aug. 16, 2001.

Before SILER and GILMAN, Circuit Judges; DUGGAN, District Judge.*

SILER, Circuit Judge.

Defendant Alan Partridge was convicted of conspiracy to distribute cocaine, 21 U.S.C. § 846, and the use of a communication facility to facilitate a conspiracy to distribute cocaine, 21 U.S.C. § 843(b). He appeals the district court's decision not to instruct on entrapment and several aspects of his sentence. We affirm.

## I. Background

Partridge bought and sold cocaine with Betty Peterson and, after her death, with her daughter, Barbara Rice. Partridge and Rice dated between 1992 and 1994, when they both resided in West Virginia. After they split up, Rice moved to Newport, Tennessee and lived with Peterson, while Partridge remained in West Virginia. Rice continued to see Partridge, however, because he traveled to Newport to buy and sell cocaine with Peterson. Rice witnessed many drug transactions between Partridge and Peterson. When Partridge and Peterson met, Partridge would cut a whole kilogram ("kilo") of cocaine in half. He would then sell a half kilo to Peterson and keep the other half kilo for himself. From February 1997 through September 1997, Partridge sold a half kilo of cocaine to a whole kilo of cocaine per month to Peterson. Peterson died in September 1997.

Approximately two months after her mother's death, Rice began distributing cocaine on her own. She continued her mother's practice of purchasing half kilos from Partridge. Rice estimated that she bought between 2.5 and 3 kilos of cocaine from Partridge from the time that she took over her mother's business until she was arrested in June 1998.

In March 1997, Jim Williams, a special agent with the Tennessee Bureau of Investigation ("TBI"), began an undercover investigation of Peterson and her "organization." After Peterson died, he focused his investigation on Rice. In 1998, he made undercover cocaine purchases from her. In March 1998, Williams attempted to purchase a half kilo of cocaine from Partridge through Rice. Because Rice was having problems getting cocaine from Partridge at that time, Williams arranged a "reverse sting operation," whereby he posed as a cocaine distributor and offered to supply Rice and Partridge.

Rice first approached Partridge about Williams's proposed cocaine deal between the end of May and the beginning of June 1998. She spoke with Partridge by telephone and discussed specifics such as price. In their conversations, Rice and Partridge referred to "cocaine" as "car." On June 5, 1998, Rice spoke with Williams on the telephone and told him about the sales price that she had quoted to Partridge, who had decided to purchase a kilo of cocaine through Williams's operation. During these events, Rice did not know that Williams was an undercover agent.

---

* The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation.

On June 8, 1998, the date of the reverse sting, Rice accompanied Williams to a motel, where they were to meet with cocaine suppliers. At the motel, Rice was confronted by other TBI agents, learned Williams's true identity for the first time, and agreed to cooperate with law enforcement by contacting Partridge. After she agreed to cooperate, the TBI installed a tape recorder on her telephone. Agents recorded and monitored three subsequent telephone conversations, during which Partridge and Rice discussed the cocaine deal. Rice told Partridge to "come and pick up his stuff."

In 1999, Partridge and four other defendants were indicted on drug charges. Pursuant to count 1, all five co-defendants were charged with conspiracy to distribute cocaine in violation of 21 U.S.C. § 846. Additionally, counts 21, 22, and 23 charged Partridge with the use of a communication facility—a telephone—to facilitate a conspiracy to distribute cocaine in violation of 21 U.S.C. § 843(b). While his four co-defendants pleaded guilty to count 1, Partridge went to trial.

Partridge was convicted on counts 1, 21, 22, and 23. The court sentenced him to 151 months imprisonment. To date, Partridge continues to deny any involvement with cocaine and contends that the tape recorded conversations concerned a car sale.

Partridge appeals three aspects of his trial/sentence. He contends that the district court erred by a) not instructing the jury on entrapment; b) estimating drug quantity for sentencing purposes; and c) incorrectly adjusting his base offense level.

## II. Analysis

### a. Entrapment Instruction

We review a district court's choice of jury instructions under an abuse of discretion standard. *See United States v. Prince,* 214 F.3d 740, 761 (6th Cir.2000).

A valid entrapment defense has two elements: 1) government inducement of the crime and 2) a lack of predisposition on the part of the defendant to engage in the criminal conduct. *See Mathews v. United States,* 485 U.S. 58, 63, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988); *United States v. Nelson,* 922 F.2d 311, 317 (6th Cir.1990). Once a defendant shows that the government induced him to commit an offense, the burden then shifts to the government to prove beyond a reasonable doubt that the defendant was predisposed to commit that offense. *See Nelson,* 922 F.2d at 317.

A defendant "is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find that the government entrapped the defendant." *See United States v. Graham,* 856 F.2d 756, 762 (6th Cir.1988). To be entitled to an entrapment instruction, however, a defendant must come forward with evidence "that government agents implanted criminal design in his mind and induced him to commit the offense." *Nelson,* 922 F.2d at 317. "[E]vidence that Government agents merely afforded an opportunity or facilities for the commission of the crime would be insufficient to warrant such an instruction." *Mathews,* 485 U.S. at 66. Where a telephone call is initiated by an individual other than a defendant, including law enforcement, that defendant can still be convicted for the unlawful use of a telephone pursuant to 21 U.S.C. § 843(b). *See United States v. McLernon,* 746 F.2d 1098, 1107 (6th Cir.1984).

The district court did not abuse its discretion by denying Partridge's request for a jury instruction on entrapment. He provided no evidence that government agents induced him to commit his crime(s) beyond affording him the opportunity to participate, through drug associate Rice, in another cocaine deal. Partridge's strongest

argument is that government agents asked Rice to telephone him, but government initiation of a telephone call does not itself constitute entrapment. Without knowing that Williams was a TBI agent, Rice presented Williams's proposed cocaine deal to Partridge, whose participation in that deal was well under way before Rice called him at the TBI's direction.

### b. Drug Quantity

Partridge also contends that, pursuant to either i) *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) or ii) clear error review, the district court erred in calculating drug quantity for sentencing. "Whether the district court violated the constitutional rule expressed in *Apprendi* is a question of law we review de novo." *United States v. Arellano–Rivera*, 244 F.3d 1119, 1126–27 (9th Cir.2001). But, where *Apprendi* does not apply, a district court's determination of the quantity of drugs used to compute a defendant's sentence is a finding of fact that should not be rejected unless clearly erroneous. *See United States v. Lloyd*, 10 F.3d 1197, 1219 (6th Cir.1993).

### i. *Apprendi*

This case is distinguishable from seemingly similar cases where we have found *Apprendi* violations. In *United States v. Ramirez*, 242 F.3d 348 (6th Cir. 2001) (applying *Apprendi*), where a defendant was sentenced pursuant to 21 U.S.C. § 841(b)(1)(A), this court held:

From a practical perspective . . . when a defendant is found guilty of violating 21 U.S.C. § 841(a)(1), he must be sentenced under 21 U.S.C. § 841(b)(1)(C) unless the jury has found beyond a reasonable doubt that the defendant possessed the minimum amounts required by § 841(b)(1)(A) and § 841(b)(1)(B). Because in this case the government did not charge or attempt to prove to the jury a quantity of drugs that would permit a mandatory sentence, we remand this case to the District Court with instructions to sentence the defendant under 21 U.S.C. § 841(b)(1)(C) and in accordance with the U.S. Sentencing Guidelines.

*Id.* at 352. As in *Ramirez*, Partridge's indictment "charged him in general language" and did not specify the quantity of drugs for which he (and his co-conspirators) was indicted. *Ramirez*, 242 F.3d at 350. And the jury did not consider drug quantity when it convicted him.

But this case is distinguishable from *Ramirez* and others in the most significant way. In those cases, either an indictment or a district court specified that a defendant was being sentenced pursuant to §§ 841(b)(1)(A) or 841(b)(1)(B). Partridge's indictment, however, did not specify which prong of § 841(b)(1) that he was to be sentenced under. And, the district court simply stated that he was sentenced under § 846. Section 846 cocaine violations can be sentenced under three different provisions: §§ 841(b)(1)(A), 841(b)(1)(B), or 841(b)(1)(C). Since the district court did not specify the prong of § 841(b)(1) that it used to sentence Partridge, we will treat Partridge's sentence as a § 841(b)(1)(C) sentence.

Section 841(b)(1)(C) does not require that a jury make any finding about drug quantity. Instead, it permits the court to sentence a defendant to a term or imprisonment not to exceed 20 years. Partridge was sentenced to less than 20 years. Because we analyze Partridge's sentence pursuant to § 841(b)(1)(C), there is no *Apprendi* violation.

### ii. Clear Error

Partridge further contends that, if *Apprendi* does not apply, the district court clearly erred in estimating drug quantity

for sentencing. The district court's conservative estimate of drug quantity was "based on the evidence introduced at trial and statements made by [Partridge's] co-defendants." In concluding that Partridge trafficked in 6 to 7 kilos of cocaine, the district court made the following findings: 1) that from February 1, 1997 until September 30, 1997, Partridge and Peterson would split a kilo of cocaine at least once a month for a total of at least 8 kilos of cocaine but, to "err on the side of caution," it would not include this cocaine in its final calculation; 2) Rice testified that she received from 2.5 to 3 kilos from Partridge, meaning that, based upon their established practice of splitting a whole kilo of cocaine, a total of 5 to 6 kilos of cocaine were distributed between Rice and Partridge; and 3) Rice purchased 6 more ounces of cocaine from Partridge at a later sale, where she observed him in possession of the rest of the kilo. In estimating total drug quantity, the court did not include the kilo of cocaine that Partridge was attempting to buy at the time of his arrest in June 1998. The district court did not err by sentencing Partridge pursuant to USSG 2D1.1(a)(3)(4), which is the applicable sentencing provision where at least 5 but less than 15 kilos of cocaine are involved.

### c. Base Offense Level Adjustments

Finally, Partridge argues that the district court erred in the adjustments to his base offense level. He argues that he i) should not have received an upward adjustment for obstruction of justice; ii) should have received a reduction for acceptance of responsibility; and iii) was eligible for the "safety valve" provision. Each of these arguments is meritless.

### i. Obstruction of Justice

██ In reviewing a district court's application of USSG § 3C1.1, this court applies a three-step approach. *See United States v. McDonald*, 165 F.3d 1032, 1034 (6th Cir.1999). First, findings of fact are reviewed under a clearly erroneous standard. *See id.* Second, the determination of whether the facts constitute an obstruction of justice, a mixed question of law and fact, is reviewed de novo. *See id.* And third:

> once there has been a finding of obstruction of justice, the court must apply the enhancement. The guideline states that if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense … increase the offense by 2 levels." USSG § 3C1.1. Because the enhancement language of the guideline is mandatory rather than discretionary, such enhancement is reviewed under the de novo standard.

*Id.*

██ Pursuant to USSG § 3C1.1, the district court assessed Partridge with a two-level adjustment for obstruction of justice because he committed perjury. Partridge contends that this enhancement constituted error because the "jury made no finding of fact that [he] committed perjury." But a jury is not required to make such a finding for § 3C1.1 to attach. Instead, a district judge is required to make a specific finding that defendant gave false testimony under oath. *See United States v. Burnette*, 981 F.2d 874, 878 (6th Cir. 1992). The district judge made that specific finding with regard to Partridge. Therefore, the district court did not err by assessing a two-level adjustment for obstruction of justice.

### ii. Acceptance of Responsibility

██ A district court's decision whether to reduce a defendant's offense level for acceptance of responsibility is a factual determination that is subject to a

clearly erroneous standard of review. *See United States v. Carroll*, 893 F.2d 1502, 1511–12 (6th Cir.1990).

The district court did not grant Partridge a two-level reduction under § 3E1.1. Partridge argues that he was entitled to an acceptance of responsibility adjustment on the grounds that he should not be penalized for maintaining his innocence, and that he admitted associating with an individual who dealt drugs but was not a co-defendant. His argument is without merit. At trial, Partridge not only pleaded not guilty, but he denied any involvement in drug trafficking. And, after his conviction, he continued (and continues) to deny that he ever distributed cocaine with Rice. Thus, the district court adopted the U.S. Probation Office's conclusion that "[s]ince the defendant proceeded to jury trial and still maintains his innocence, he does not qualify for an adjustment for acceptance of responsibility." That conclusion did not constitute clear error.

### iii. Safety Valve

 This court treats a district court's refusal to apply USSG § 5C1.2 as a factual finding that is subject to clear error review. *See United States v. Adu*, 82 F.3d 119, 124 (6th Cir.1996). In relevant part, USSG § 5C1.2 reads:

In the case of an offense under 21 U.S.C. § 841 ... § 846 ..., the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)-(5) set forth verbatim below:

\* \* \* \* \* \*

 (5) not later than the time of the sentencing hearing, the defendant has

truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan. . . .

A defendant has the burden of proving "safety valve" eligibility by a preponderance of the evidence. *See Adu*, 82 F.3d at 123–24. And, "[e]very court which has considered the issue has held that [§ 5C1.2(5)] requires a defendant to provide complete information regarding the immediate chain of distribution." *United States v. Maduka*, 104 F.3d 891, 894 (6th Cir.1997).

Partridge contends that the district court erred by finding that he was not eligible under § 5C1.2. His argument is again based on the fact that he admitted associating with an individual who dealt drugs but was not a co-defendant. In rejecting his argument, the district court cited ample evidence that Partridge has never admitted participating in a cocaine conspiracy. Thus, Partridge has provided the government with no information about or evidence relevant to his drug conspiracy. Accordingly, the district court's refusal to apply § 5C1.2 did not constitute clear error.

**AFFIRMED.**