**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Clinton Caldwell FRIDLEY,**
**Defendant–Appellant.**

No. 01–5553.

United States Court of Appeals,
Sixth Circuit.

Aug. 6, 2002.

Before SILER, COLE, and CLAY,
Circuit Judges.

## OPINION

COLE, Circuit Judge.

Clinton Caldwell Fridley appeals his jury conviction for conspiracy, dealing in firearms without a license, knowingly making a machine gun, possession and transfer of a machine gun, and aiding and abetting the possession of firearms by a convicted felon. He alleges that the district court erred by failing to grant his motion for acquittal and by refusing his request for an entrapment instruction to the jury.

Because the prosecution presented sufficient evidence to support the jury verdict, and because Fridley supplied insufficient evidence to warrant the entrapment instruction, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

Bernard Waggoner, special agent with the Bureau of Alcohol, Tobacco and Firearms ("ATF"), received a phone call from Johnson City, Tennessee authorities requesting his help in an undercover investigation. The state Drug Task Force had become aware that Fridley, also known as "CJ," was illegally selling firearms. Waggoner agreed to wear a hidden microphone and pose as the cousin of a local informant. He and the informant then met Fridley in

November 1997. At that meeting, Waggoner purchased a .380 semiautomatic pistol from Fridley for $200. Fridley told Waggoner that "I got an arsenal." At the conclusion of the meeting, Waggoner and Fridley arranged to meet for another purchase of weapons.

On December 2, 1997, Waggoner again met with Fridley, this time at an Arby's restaurant in Elizabethton, Tennessee. Fridley asked Waggoner if he was wearing a wire. Waggoner responded that he was not. Fridley then talked about the different weapons he could sell, including plastic explosives, pistols, and rifles. Fridley said he would sell Waggoner SKS assault rifles and that he could make them "rock and roll."[1] He said he could get Waggoner "anything you want. Automatic, semi, fully, got stocks barrels, the whole nine yards." At the conclusion of the meeting, Waggoner told him that "building machine guns might be a little illegal. But that's alright," to which Fridley responded, "automatic weapons are illegal."

The following day, Waggoner again met Fridley in Johnson City. Waggoner paid Fridley $300 for a .22 revolver. They discussed the SKS rifles again; Fridley offered Waggoner the instructions on how to make them fully automatic, but Waggoner refused saying, "I am not a machinist." Fridley asked, "Do you want me to rig, make it to fully automatic?" To which Waggoner responded, "If you want to."

On December 17, 1997, Waggoner along with another undercover ATF agent, Tully Kessler, met with Fridley and his housemate, Carl Wayne Sheets, at the resident they shared with Sheets's mother. Waggoner testified that Fridley and Sheets took the two agents upstairs where approximately ten firearms were displayed on a blanket on the floor. During negotia-

---

1. Waggoner testified that this was slang for making the weapon fire as a machine gun.

tions, the agents discovered that Sheets was the person who actually converted the firearms into machine guns. Sheets produced an SKS rifle trigger assembly that Sheets alleged would convert the rifle to fire as a rully automatic weapon. The rifle failed to fire as a machine gun during a field tes; as a result, Sheets agreed to repair the machine gun and convert another SKS rifle the following week and sell both for $1,400. On December 23, 1997, the two agents again met with Fridley and Sheets at the latter's residence. Waggoner testified that Fridley produced two SKS rifles with missing trigger assemblies from beneath the couch cushions and Sheets pulled two trigger assemblies from beneath his seat. Waggoner then paid $1,400 and left with the two guns.

Waggoner returned to the house on January 7, 1998, Fridley and Sheets again offered a selection of firearms and again offered to convert SKS rifles into machine guns. Waggoner said he would like to get machine guns four or five and a time; Fridley replied that he could supply them "[t]wenty at a time if you got enough money." On February 16, 1998, Waggoner contacted Sheets to arrange receipt of the converted rifles. The following day, Waggoner obtained a search warrant from a federal magistrate judge. On February 19, 1998, Waggoner went to the residence and met with Sheets and Fridley. Kessler phoned Sheets at the residence under the pretense of inviting them to dinner. Waggoner, Fridley, and Sheets then traveled to a neighboring town, where the suspects were taken into custody at a local restaurant. At the house, agents recovered numerous firearms, including an SKS rifle converted into a machine gun, additional SKS trigger assemblies, as well as a book on how to convert SKS rifles into machine guns.

Fridley was indicted on seven counts of firearms violations. The government called an ATF firearms expert to testify to the different types of firearms. Sheets was called as a witness against Fridley. Sheets testified that he had experimented with converting SKS rifles since 1997, that Fridley knew of his efforts, and that Fridley knew that Sheets was a convicted felon. Fridley rested without offering any evidence. Fridley asked for and was denied a jury instruction on entrapment, and his motion for acquittal was denied as well. The jury returned a guilty verdict on all seven counts. The court sentenced Fridley to imprisonment of fifty-seven months on all counts, to be served concurrently. Fridley now appeals.

## II. DISCUSSION

### A. Motion for Acquittal

#### 1. *Standard of Review*

A Rule 29 motion for acquittal is properly denied if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *cf.* Fed.R.Crim.P. 29. We resolve all reasonable inferences in favor of the government. *United States v. Layne,* 192 F.3d 556, 568 (6th Cir.1999).

#### 2. *Analysis*

Fridley was convicted on seven counts:

**Count 1:** conspiracy to commit offenses against the United States in violation of 18 U.S.C. § 371.

**Count 2:** dealing in firearms without a license in violation of 18 U.S.C. §§ 922(a)(1)(A) and 924(a)(1)(D).

**Counts 3 and 5:** knowingly making firearms function as a machine gun in viola-

tion of 26 U.S.C. §§ 5822, 5861(f), and 5871.

**Counts 4 and 6:** possession and transfer of a machine gun in violation of 18 U.S.C. §§ 922(*o* ) and 924(a)(2).

**Count 7:** aiding and abetting possession of firearms by a convicted felon in violation of 18 U.S.C. §§ 922(g) and 924(a)(2).

Because a valid conviction on any one of these counts is sufficient to support the sentence imposed, we will address Fridley's challenge only as it pertains to Count 2, dealing in firearms without a license.

It is unlawful for any person except a licensed dealer to "engage in the business" of dealing in firearms. 18 U.S.C. § 922(a)(1)(A). A person who "engage[s] in the business" of dealing in firearms is a person "who devotes time, attention, and labor to engaging in such activity as a regular course of trade or business with the principal objective of livelihood and profit." 18 U.S.C. § 921(a)(21)(D); *see also United States v. Dettra,* No. 99–3667, 2000 WL 1872046, at \*2 (6th Cir. Dec.15, 2000) (unpublished). In order to support a conviction for dealing in firearms without a license, the government must show that the defendant knew his conduct was unlawful. *See Bryan v. United States,* 524 U.S. 184, 192, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998).

■ There is an abundance of evidence to support the conviction. It is undisputed that Fridley was not a licensed firearms dealer. Fridley's own recorded conversation demonstrates that his principal objective of dealing in firearms was for profit and not as a hobby. For example, he said that "I got military weapons, grenades, anything you want. I deal in firearms." Later, he suggested that he would sell machine guns in bulk: "But you have to have quantity. You would have to take four at a time." Finally, all of Fridley's

actions fairly imply that he knew his actions were illegal. He asked Waggoner whether he was wearing a wire, and asked both Waggoner and Kessler for identification to ensure they were not police officers. The district court did not err in denying the motion to acquit.

■ The jury's verdict on Count 2 alone is sufficient to support the fifty-seven month prison sentence imposed by the district court. Moreover, Fridley's conviction on the other six counts is fully supported by the record. As a consequence, we find it unnecessary to offer a detailed opinion on Fridley's other Rule 29 claims.

## B. Entrapment Instruction

### 1. *Standard of Review*

We review jury instructions as a whole to determine whether they fairly and adequately submitted the issues and applicable law to the jury. *United States v. Khalil,* 279 F.3d 358, 364 (6th Cir.2002). A district court's refusal to deliver a requested instruction is reversible only if the instruction is (1) a correct statement of the law, (2) not substantially covered by the charge actually delivered to the jury, and (3) concerns a point so important in the trial that the failure to give it substantially impairs the defendant's defense. *Id.*

A defendant is entitled to an entrapment instruction "whenever there is sufficient evidence from which a reasonable jury could find entrapment." *Mathews v. United States,* 485 U.S. 58, 62, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988). To be entitled to an entrapment defense, a defendant must present evidence to show (1) government inducement of the crime, and (2) lack of predisposition on the part of the defendant to engage in the criminal activity. *Khalil,* 279 F.3d at 364; *see also United States v. Nelson,* 922 F.2d 311, 317 (6th Cir.1990).

## 2. *Analysis*

 Fridley has not produced sufficient evidence to entitle him to the entrapment instruction. Specifically, Fridley has not supplied any evidence from which a jury could conclude that he lacked a predisposition to engage in the criminal activity. Predisposition "focuses upon whether the defendant was an 'unwary innocent' or instead, an 'unwary criminal' who readily availed himself of the opportunity to perpetrate the crime." *Mathews,* 485 U.S. at 63. Evidence of predisposition includes 1) the character or reputation of the defendant, including any prior criminal record; (2) whether the suggestion of the criminal activity was initially made by the Government; (3) whether the defendant was engaged in the criminal activity for profit; (4) whether the defendant evidenced reluctance to commit the offense, overcome only by repeated Government inducement or persuasion; and (5) the nature of the inducement or persuasion supplied by the government. *Khalil,* 279 F.3d at 365.

Although Fridley did not have a prior felony conviction for illegally dealing in firearms, he did brag that he "deal[t] in firearms." Fridley clearly showed his willingness to continue dealing in firearms after the first sale, stating to the agent "You tell me what you want." The evidence also shows that he decided to sell weapons, including automatic weapons, for a profit. He stated that he could build Waggoner an SKS rifle. When asked whether he could supply automatic weapons, Fridley replied that he could despite knowledge that such weapons were illegal. Fridley did express some reluctance to convert the firearms himself, but decided to continue even though Waggoner stated "I don't want you to do anything you don't want to do." Any persuasion that the government supplied was only by way of appealing to Fridley's greed. Waggoner stated that he would give him three hundred dollars for an unconverted rifle, but four hundred dollars for a converted one. Instead of declining the extra money for additional illegal conduct, Fridley agreed to supply machine guns. Finally, even were there evidence that Waggoner entrapped Fridley into supplying machine guns, the record demonstrates that Fridley expressed a clear willingness to illicitly deal in other firearms as alleged in Count 2. *See* 18 U.S.C. §§ 922(a)(1)(A) & 924(a)(1)(D). Because Fridley's conviction on that count supports the sentence imposed, any error in the instructions could not have been prejudicial.

## III. CONCLUSION

For the foregoing reasons we **AFFIRM** the district court's judgment and sentence.